[No. C041233. Third Dist. Oct. 21, 2003.]

THE BURLINGTON NORTHERN AND SANTA FE RAILWAY
COMPANY et al., Petitioners, v.
PUBLIC UTILITIES COMMISSION, Respondent;
UNITED TRANSPORTATION UNION, Real Party in Interest.

## COUNSEL

Crosby, Heafey, Roach & May, Joseph P. Mascovich, Michael L. Whitcomb, W. Douglas Werner, David M. Pryor and Carol A. Harris for Petitioners.

Carrie Pratt, Gary M. Cohen, Mary F. McKenzie, Dale A. Holzschuh and James S. Rood for Respondent.

Hildebrand, McLeod & Nelson and Frederick L. Nelson for Real Party in Interest.

## OPINION

**NICHOLSON, J.**—Labor Code section 6906, subdivision (b) requires service as a brakeman before an employee becomes a conductor.[1] Acting on a report by the United Transportation Union (Union), the California Public Utilities Commission (PUC) determined that two railroad companies, Burlington Northern and Santa Fe Railway Company and Union Pacific Railway Company (Railroads), were violating section 6906, subdivision (b).[2] Although the PUC found merit in the Railroads' assertion that section 6906(b) had been repealed by implication, it ordered the Railroads to comply with the statute because it believed that, pursuant to article III, section 3.5 of the California Constitution,[3] it could not refuse to enforce section 6906(b). The Railroads petitioned this court for a writ of review, which we issued.

We agree with the PUC that section 6906(b) was repealed by implication. We determine, however, that article III, section 3.5 does not prevent the PUC from refusing to enforce this statute. Therefore, we annul the PUC's decision enforcing section 6906(b).

---

[1] References hereafter to an unspecified code are to the Labor Code.

[2] Hereafter, section 6906(b).

[3] Hereafter, article III, section 3.5.

## BACKGROUND

The duties of a conductor and brakeman are not defined by statute or regulation. Instead, they are subject to industry practice and collective bargaining agreements. Historically, a brakeman assisted the conductor. His duties included setting and releasing brakes.

In 1937, the Legislature enacted section 6906(b), pursuant to which railroads were prohibited from employing "[a] conductor who has not had at least two years' actual service as a railroad brakeman on steam or electric railroad other than street railway, or one year's actual service as a railroad conductor." (Stats. 1937, ch. 90, § 6906, p. 316.) Modern braking systems, however, have generally eliminated the need for a brakeman's service. Other technological advancements have eliminated additional aspects of a brakeman's job. Industry practice and collective bargaining agreements have recognized the elimination of the need for brakemen. Current hiring and training practices in the railroad industry enable employees to be trained and employed as conductors without serving as brakemen. Despite these advances and changes in the railroad industry, section 6906(b), amended slightly in 1957, remains in effect.

"Featherbedding" is a practice, whether created by law or agreement, that requires a business to employ persons in excess of the number of employees reasonably required to perform actual services. (See McMillion, *Collective Bargaining in the Federal Sector: Has the Congressional Intent Been Fulfilled?* (Winter 1990) 127 Mil.L.Rev. 169, 172, fn. 15 [describing means and purposes of featherbedding].) In 1964, the California electorate moved to eliminate featherbedding practices in the railroad industry. By initiative, it enacted the Anti-Featherbedding Law of 1964. (Ballot Pamp., Gen. Elec. (Nov. 3, 1964) text of Prop. 17, pp. 24–26.) The Anti-Featherbedding Law includes section 6900.5, which states, in pertinent part: "It is the policy of the people of the State of California that featherbedding practices in the railroad industry should be eliminated . . . . Nothing contained in the laws of this State or in any order of any regulatory agency of this State shall prevent a common carrier by railroad from manning its trains . . . in accordance with any agreement between a railroad company and its employees or their representatives."

Despite its participation in collective bargaining agreements that did not require conductors to have prior service as brakemen, the Union reported to the PUC that the Railroads were violating section 6906(b). After the Railroads admitted they no longer adhered to the requirements of section 6906(b), the PUC issued a formal order to show cause, providing to the Railroads the opportunity to present evidence and argument on the issue.

In ruling against the Railroads, the PUC recognized the Railroads were arguing that section 6906(b) is (1) unconstitutional, (2) preempted by federal law, and (3) *inconsistent with the state Anti-Featherbedding Law*. The PUC further commented that "these contentions are not without merit . . . ." However, it opined that, due to the restrictions found in article III, section 3.5, it did not have authority to refuse to enforce section 6906(b). To support this, the PUC quoted a portion of *Reese v. Kizer* (1988) 46 Cal.3d 996, at page 1002 [251 Cal.Rptr. 299, 760 P.2d 495], which states: "The purpose of [article III, section 3.5] was to prevent agencies from using their own interpretation of the Constitution or federal law to thwart the mandates of the Legislature." The PUC failed to recognize, however, that its enforcement of section 6906(b) was, in effect, a refusal to enforce the later enacted state Anti-Featherbedding Law.

The Railroads filed a petition for writ of review in this court. (Pub. Util. Code, § 1756.) We issued a writ of review and stayed the PUC's decision.

In proceedings in this court, the parties did not raise the issue of whether article III, section 3.5 prohibits the PUC from refusing to enforce a statute that has been repealed by implication by another statute. Accordingly, we directed the parties to file supplemental letter briefs on the issue. The Railroads responded to our order. The Union attempted to file a late response, which we rejected. And the PUC ignored our order, even though it is a party to this action and the issue presented a question concerning the scope of the PUC's authority.

The Railroads' supplemental letter brief represented an apparent change in its position. In proceedings before the PUC, the Railroads asserted that the PUC had authority to refuse to enforce a statute if such enforcement would result in violation of an inconsistent state requirement. In its supplemental letter brief to this court, however, the Railroads asserted the PUC was without authority to refuse to enforce section 6906(b).

The issue of whether the state Anti-Featherbedding Law repealed section 6906(b) by implication was properly presented to the PUC for its consideration. Although no party contends the PUC has authority to refuse to enforce a statute that has been repealed by implication, we must start with that foundational question because it must be answered before we can determine the scope of our current review of the PUC decision. In other words, if the PUC has authority to refuse to enforce section 6906(b) because it was repealed by implication, our review is limited to whether the PUC properly decided the issue of whether the statute was repealed by implication. In such a case, it is unnecessary for the PUC, relying on article III, section 3.5, to refuse to enforce the statute based on constitutional or federal preemption grounds.

DISCUSSION

I

Scope of Article III, Section 3.5

In 1976, the California Supreme Court held that the PUC may determine the constitutional validity of a statute. (*Southern Pac. Transportation Co. v. Public Utilities Com.* (1976) 18 Cal.3d 308, 311, fn. 2 [134 Cal.Rptr. 189, 556 P.2d 289].) Dissenting from that holding, Justice Stanley Mosk wrote that the PUC does not have constitutional review power. Defending his position against the argument that not giving the PUC constitutional review power allows invalid statutes to remain in effect, he stated: "It is true that if the commission lacks constitutional review power, an invalid statute will remain in effect during the interval between the PUC decision and this court's reviewing opinion. But on the other hand a time lag will also occur when the commission, as in the present case, erroneously declares a law unconstitutional: during the period before this court reverses the commission, legislation duly enacted by the representatives of the people of California will not be enforced. [Citations.] The question, accordingly, is which time lag is the less undesirable: a period during which an unconstitutional law remains effective prior to court review, or a delay during which a valid legislative measure is rendered inoperative." (*Id.* at p. 320 (conc. & dis. opn. of Mosk, J.).)

Justice Mosk answered his own question by concluding it is more desirable to leave an invalid statute in effect until the court can review it. (*Southern Pac. Transportation Co. v. Public Utilities Com., supra,* 18 Cal.3d at p. 320 (conc. & dis. opn. of Mosk, J.).) Less than two years later, the electorate, at least in practical terms, agreed with Justice Mosk. In response to the majority opinion, the Legislature, by unanimous vote, placed Proposition 5 on the ballot. (Ballot Pamp., Primary Elec. (June 6, 1978) text of Prop. 5, p. 24.) The electorate voted in favor of it, adopting article III, section 3.5, which prohibits the PUC and other administrative agencies from declaring statutes unconstitutional or preempted by federal law. (See *Reese v. Kizer, supra,* 46 Cal.3d at p. 1002 [reviewing history of Prop. 5].)

For the moment, we assume, for the purpose of argument, that the PUC was correct when it determined that section 6906(b) is inconsistent with the state Anti-Featherbedding Law. While the parties have never couched the issue in these terms, we must decide whether the PUC may refuse to enforce a statute because enforcement of the statute would be, in effect, a refusal to enforce a different and inconsistent statute. Both as a practical and legal matter, the question must be answered in the affirmative.

Article III, section 3.5 states: "An administrative agency, including an administrative agency created by the Constitution or an initiative statute, has no power: [¶] (a) To declare a statute unenforceable, or refuse to enforce a statute, on the basis of it being unconstitutional unless an appellate court has made a determination that such statute is unconstitutional; [¶] (b) To declare a statute unconstitutional; [¶] (c) To declare a statute unenforceable, or to refuse to enforce a statute on the basis that federal law or federal regulations prohibit the enforcement of such statute unless an appellate court has made a determination that the enforcement of such statute is prohibited by federal law or federal regulations."

On its face, article III, section 3.5 does not prohibit the PUC from refusing to enforce a statute because it is inconsistent with another statute. The constitutional provision only restricts the PUC's use of two sources as justification for refusing to enforce a statute: the state Constitution and federal law. ■ When the language of a constitutional provision is clear, " 'there is no need for construction and *courts should not indulge in it.*' [Citation.]" (*Mutual Life Ins. Co. v. City of Los Angeles* (1990) 50 Cal.3d 402, 413 [267 Cal.Rptr. 589, 787 P.2d 9960], italics in original.) ■ Therefore, article III, section 3.5 does not prohibit the PUC from refusing to enforce a statute because it is inconsistent with another statute.

Since the constitutional provision is clear on its face, it is unnecessary to look beyond the language to determine its meaning. (See *Mutual Life Ins. Co. v. City of Los Angeles, supra,* 50 Cal.3d at p. 413.) Even if we were to consider its history, however, the same interpretation would result. The ballot pamphlet for Proposition 5 included an analysis of the proposed constitutional amendment by the Legislative Analyst, who stated: "This constitutional amendment would forbid any state administrative agency, whether created in the Constitution or not, to (1) declare a state law unconstitutional or (2) refuse to enforce a state law on the basis that it is unconstitutional or that it is prohibited by federal law unless such a determination has already been made by an appellate court." (Ballot Pamp., Primary Elec. (June 6, 1978) analysis of Prop. 5 by Legislative Analyst, p. 24.) Nothing in the ballot pamphlet contradicted or expanded this interpretation of the proposed constitutional amendment.

Again assuming for the moment that section 6906(b) and the state Anti-Featherbedding Law are inconsistent, enforcement of both is impossible, at least under the facts of this case, as will be discussed below. Article III, section 3.5 relieved the PUC of the authority to enforce the constitution and federal law, at least to the extent they are inconsistent with state statutes and in the absence of a decisive appellate court opinion. The PUC, however, remains duty-bound to enforce section 6906(b) *and* the state Anti-Featherbedding Law, if possible. (§ 6900 [PUC "shall enforce" these laws].)

Article III, section 3.5 does not prohibit the PUC from refusing to enforce a statute that is inconsistent with another statute for good reason: the constitution cannot require the impossible. Therefore, the PUC had the duty to consider both statutes and, if the statutes were found to be so inconsistent that they could not both be enforced, to determine, by application of established legal principles, which of the statutes to enforce.

The Railroads assert that, even though the language of article III, section 3.5 does not prohibit the PUC from refusing to enforce a statute because it is inconsistent with another statute, the underlying policy of article III, section 3.5 is to prevent the PUC from refusing to enforce a statute under any circumstances, unless an appellate court has held the statute unenforceable. We disagree with the premise that the underlying policy of the constitutional provision is anything other than what is reflected in the plain language on the face of the provision. Indeed, the Railroads' approach would violate the fundamental principle of interpretation that proscribes construction when the language is clear. (See *Mutual Life Ins. Co. v. City of Los Angeles, supra,* 50 Cal.3d at p. 413.)

The Railroads further assert that our interpretation of article III, section 3.5, under which the PUC has authority to refuse to enforce a statute that is inconsistent with another statute, violates the doctrine of separation of powers. As support for this assertion, the Railroads cite Justice Mosk's concurring and dissenting opinion in *Southern Pac. Transportation Co. v. Public Utilities Commission, supra* 18 Cal.3d at pages 318–319. While the adoption of Proposition 5 had the effect of reversing the result in *Southern Pac. Transportation Co. v. Public Utilities Com.,* it did not have the effect of validating Justice Mosk's minority view that allowing the PUC to refuse to enforce an unconstitutional statute violated the separation of powers doctrine.

Article III, section 3 of the California Constitution states: "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution."

The purpose of the separation of powers doctrine is to prevent one branch from arrogating to itself the core functions of another branch. (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 662 [128 Cal.Rptr.2d 104, 59 P.3d 174].) "[I]n certain situations," however, "one branch of government properly can exercise a function that only incidentally affects a power vested primarily in another branch of government." (*Ibid.*) "[T]he separation of powers doctrine is violated only when the actions of a branch of government defeat or materially impair the inherent functions of another branch." (*Ibid.*) Allowing the PUC to choose between two inconsistent statutes, both of which it is

required by law to enforce, does not defeat or materially impair the inherent function of the judicial branch. Furthermore, the decisions of the PUC in choosing between inconsistent statutes are reviewable in the Supreme Court and Court of Appeal, as in this case. (Pub. Util. Code, § 1756.) Accordingly, a decision by the PUC to refuse to enforce section 6906(b) because it was repealed by implication would not have violated the separation of powers doctrine.

The PUC is in a favorable position to decide whether two statutes it is empowered and commanded to enforce can be consistently enforced, more so than with constitutional law and federal preemption. We commonly accord deference to an agency on interpretation of statutes concerning subjects within the agency's domain. (See *Harrott v. County of Kings* (2001) 25 Cal.4th 1138, 1154–1155 [108 Cal.Rptr.2d 445, 25 P.3d 649] [construction of statute by agency charged with its administration given great weight].)

In its decision, the PUC expressed its opinion that the state Anti-Featherbedding Law repealed section 6906(b) by implication. If that is true, the PUC should have refused to enforce section 6906(b). We therefore proceed to that question.

II

*Repeal by Implication*

Having concluded that the PUC has authority to refuse to enforce a state statute if such enforcement would result in violation of an inconsistent state statute later enacted, we must determine whether the PUC's enforcement of section 6906(b) violates the state Anti-Featherbedding Law. We conclude it does violate the Anti-Featherbedding Law. Furthermore, we conclude the PUC should have refused to enforce section 6906(b) because the state's electorate repealed section 6906(b) by implication when it adopted the Anti-Featherbedding Law.

"When a later statute supersedes or substantially modifies an earlier law but without expressly referring to it, the earlier law is repealed or partially repealed by implication. The courts assume that in enacting a statute the Legislature was aware of existing, related laws and intended to maintain a consistent body of statutes. [Citations.] Thus there is a presumption against repeals by implication; they will occur only where the two acts are so inconsistent that there is no possibility of concurrent operation, or where the later provision gives undebatable evidence of an intent to supersede the earlier; the courts are bound to maintain the integrity of both statutes if they

may stand together. [Citations.]" (*Sacramento Newspaper Guild v. Sacramento County Bd. of Suprs.* (1968) 263 Cal.App.2d 41, 54 [69 Cal.Rptr. 480]; see also *Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476–477 [66 Cal.Rptr.2d 319, 940 P.2d 906] [presumption against repeal by implication].) For the purpose of interpretation, a statute enacted by initiative is treated the same as a statute enacted by the Legislature. (*People v. Bustamante* (1997) 57 Cal.App.4th 693, 699, fn. 5 [67 Cal.Rptr.2d 295].)

When a later statute enacted by initiative is inconsistent and cannot operate concurrently with an earlier statute enacted by the Legislature, the later statute prevails. (*People v. Bustamante, supra,* 57 Cal.App.4th at pp. 700–701.) For example, in *Bustamante,* the Legislature enacted Penal Code section 113 in September 1994, making it a *misdemeanor* to manufacture or sell false government documents to conceal the true citizenship or resident alien status of another person. As part of Proposition 187, however, the electorate, without repealing the statute enacted by the Legislature, enacted a parallel Penal Code section 113 in November 1994, making it a *felony* to manufacture, distribute, or sell false documents to conceal the true citizenship or resident alien status of another person. (*Bustamante* at pp. 695–696.) Convicted of violating Penal Code section 113 and sentenced under the felony version of the statute, defendant appealed. The Court of Appeal noted that, while the two statutes were not identical, any violation of the misdemeanor version was also a violation of the felony version, which proscribed additional behavior but provided for much more severe punishment. "This inconsistency," opined the court, "makes concurrent operation of these two statutes impossible." (*Bustamante* at p. 700.) The appellate court concluded that the trial court properly sentenced under the later-enacted felony version. (*Id.* at p. 701.)

The Anti-Featherbedding Law included in Proposition 17 declared that "[n]othing in the laws of this State . . . shall prevent a common carrier by railroad from manning its trains . . . in accordance with any agreement between a railroad company and its employees or their representatives." (§ 6900.5.) Proposition 17 expressly repealed several statutes that required railroads to man trains with a specified number of engineers, firemen, motormen, and brakemen. (Former §§ 6902, 6902.1, 6902.5, 6903.) The Union argues that, since Proposition 17 expressly repealed these featherbedding statutes, we must presume the electorate intended to retain section 6906(b). This argument fails for two reasons. First, the statutes expressly repealed by Proposition 17 required trains to carry specific types of workers and directly resulted in featherbedding if those workers were unneeded. Section 6906(b), on the other hand, dealt with qualifications of a conductor. Only because of advances in technology, industry practice, and labor agreements, which advances appear to have occurred both before and after Proposition 17 in 1964, has section 6906(b) become, in practice, a featherbedding statute. Therefore, it is understandable if the electorate, in

1964, did not consider section 6906(b) to be a featherbedding statute and repeal it with the others. And second, regardless of whether the electorate considered section 6906(b) to be a featherbedding statute in 1964, it is now. It currently conflicts irreconcilably with the Anti-Featherbedding Law adopted as part of Proposition 17 because it requires the Railroads to employ brakemen to work two years in an obsolete position before becoming conductors. We do not have evidence of whether the brakeman position was already obsolete in 1964, but the record before us shows it is obsolete now. Accordingly, our conclusion that section 6906(b) has been repealed by implication is not precluded by the fact that the electorate did not expressly repeal section 6906(b) as part of Proposition 17.

The Union weakly argues that section 6906(b) and the Anti-Featherbedding Law are not inconsistent because the Anti-Featherbedding Law concerns *manning* issues, while section 6906(b) concerns *qualifications* of conductors. This argument fails because it ignores the reality that, if a railroad is required to employ brakemen so that they can later become conductors, the brakemen must serve as brakemen. Having them do nothing except to wear the label of "brakemen" is the essence of featherbedding. Section 6906(b) requires "actual service" as a brakeman.

█ Enforcement of section 6906(b) has the effect of preventing the Railroads from manning its trains in accordance with collective bargaining agreements, which are based on the lack of a need for brakemen. Accordingly, enforcement of section 6906(b) violates the Anti-Featherbedding Law. As the later-enacted statute, the Anti-Featherbedding Law prevails and we must conclude that section 6906(b) has been repealed by implication.

The Union's complaint concerning the violation of section 6906(b) did not warrant action by the PUC. The Railroads' presentation of the repeal-by-implication argument, which the PUC found to be "not without merit," should have prompted the PUC to refuse to enforce the statute. Therefore, we must annul the PUC's decision.

The Union asserts we do not have authority to annul the PUC's decision. We disagree. Among other things, we are authorized to determine whether the PUC's findings support its decision. The Railroads' petition gave us jurisdiction to determine "the lawfulness of the [PUC's decision]." (Pub. Util. Code, § 1756.) "In a complaint or enforcement proceeding, . . . the review by the court shall not extend further than to determine, on the basis of the entire record . . . , whether any of the following occurred: [¶] . . . [¶] (3) The decision of the commission is not supported by the findings." (Pub. Util. Code, § 1757, subd. (a).) The PUC found that the Railroads were employing conductors who had not previously had at least two years' actual service as

brakemen or one years' actual service as conductors. Based on this finding and relying on section 6906(b), the PUC ordered the Railroads to refrain from this conduct. However, because the Anti-Featherbedding Law repealed section 6906(b) by implication and the PUC had authority to determine section 6906(b) was no longer effective, the PUC's findings did not support its decision. Therefore, we have authority to annul the decision. (Pub. Util. Code, § 1757, subd. (a)(3).)

## III

### *Remaining Issues*

Because we conclude the PUC had authority to refuse to enforce section 6906(b) because it was repealed by implication by the state Anti-Featherbedding Law, we need not express an opinion concerning the remaining issues argued by the parties. Those issues include (1) whether section 6906(b) violates constitutional rights or is preempted by federal law and (2), if that section violates constitutional rights or is preempted by federal law, whether this court may so find and direct the PUC not to enforce the statute, even though the PUC did not have the authority to refuse to enforce the statute on those grounds.

## DISPOSITION

The PUC's decision is annulled and the matter is remanded to the PUC for further proceedings consistent with our opinion. The stay, having served its purpose, is vacated. The Railroads shall recover their costs from the Union. The PUC and the Union shall bear their own costs. (See Cal. Rules of Court, rule 56.4(a).)

Scotland, P. J., and Hull, J., concurred.

A petition for a rehearing was denied November 12, 2003.