Filed 8/8/22  P. v. Todd W. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TODD W.,<br><br>    Defendant and Appellant. | B313612<br><br>(Los Angeles County<br> Super. Ct. No. 21HWMH00599) |

APPEAL from a judgment of the Superior Court of Los Angeles County, James N. Bianco, Judge.  Affirmed.

Wallin & Klarich and Stephen D. Klarich for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, William H. Shin and Blythe J. Leszkay, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Welfare and Institutions Code[1] section 8103, subdivision (f)(1) presumptively prohibits a person who has been involuntarily admitted to a mental health facility as a danger to himself or others (§ 5150 et seq.) from owning or possessing firearms for a period of five years from the date of the person's release from the facility. However, such a person may request a hearing in the superior court seeking relief from this prohibition. (§ 8103, subd. (f)(5).) At the hearing, the People have the burden of proving, by a preponderance of the evidence, that the person would not be likely to use firearms in a safe and lawful manner. (§ 8103, subd. (f)(6).)

After his involuntary hospitalization in a mental health facility pursuant to section 5150, Todd W. (Todd)[2] filed a request for relief from the section 8103, subdivision (f)(1) firearm prohibition. The trial court denied the petition, finding that the People had carried their burden of establishing that Todd would not be likely to use firearms in a safe and lawful manner.

On appeal, Todd contends that the trial court's decision is unsupported by substantial evidence and further argues that section 8103, subdivision (f) is unconstitutional as the statute infringes on his fundamental Second and Fourteenth Amendment right to bear arms. We conclude that substantial evidence supports the court's denial of Todd's petition and that Todd has forfeited his claim of constitutional error by failing to raise it in the trial court. We therefore affirm the trial court's order.

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

[2] Because this matter relates to a hold under the Lanterman-Petris-Short Act (LPS) (Welf. & Inst. Code, § 5000 et seq.), we abbreviate Todd's name to protect his privacy. (*People v. Jason K.* (2010) 188 Cal.App.4th 1545, 1549–1550, fn. 1 (*Jason K.*); *People v. Mary H.* (2016) 5 Cal.App.5th 246, 251–252, fn. 1 (*Mary H.*).)

## FACTUAL AND PROCEDURAL BACKGROUND

On June 11, 2017, Todd was detained and admitted to Intercommunity Hospital, a mental health facility, pursuant to section 5150. He was statutorily prohibited from owning or possessing firearms for five years as a result of his section 5150 hold. On April 15, 2021, Todd filed the instant petition for relief from the five-year firearm prohibition. On June 25, 2021, after an evidentiary hearing, the court denied the petition. The following evidence was presented at the hearing:

### A.    *The People's Evidence*

The People presented a West Covina police report as their only evidence.[3] The police report stated that on June 11, 2017, Todd called 911 reporting he was suicidal and that he was going to hang himself. A record check revealed that there were firearms registered to Todd.

Police went to Todd's home, positioned themselves outside, and called Todd several times. Todd did not answer his phone at first, and when he did, told police that he had passed out; he said he could not go outside to meet them because he was hanging from his bathroom door and unable to move.

The officers entered Todd's home and found Todd sitting on the floor of his bedroom with a belt around his neck. The other end of the belt was attached to a nearby doorknob. Todd was conscious and breathing, and the officers cut the belt and removed it from Todd's neck to relieve the pressure on Todd's airway. Paramedics attended to him and transported him to the

---

[3]    Hearsay evidence, including police reports and medical records, is admissible at a section 8103 hearing. (§ 8103, subd. (f)(5); see *Rupf v. Yan* (2000) 85 Cal.App.4th 411, 426.)

3

hospital. Based on Todd's statements to the police dispatchers and the way he was found, Officer Schienle determined he was a danger to himself and placed him on a 72-hour hold pursuant to section 5150.

Todd's wife, Denise, arrived and identified herself. She and Todd had argued earlier that day and she left to cool things off. Denise told officers a safe in the bedroom might contain firearms, and allowed them to collect the Glock 9 millimeter pistol they located inside the safe. Denise gave police consent to search for additional firearms and they located, and collected, a Mauser 1895 rifle and ammunition under the bed.[4]

Denise told an officer that Todd was previously in the Air Force and was diagnosed with bipolar disorder and depression about eight to ten years earlier. Around that time, Todd was placed on a 72-hour hold at Charter Oak Hospital and spoke about hanging himself.

At the hospital, Todd told Corporal Street that "he is living in hell and has nothing left to live for."

---

[4]     Section 8102 authorizes the seizure and possible forfeiture of weapons belonging to persons detained for examination under section 5150 because of their mental condition. (*Rupf v. Yan, supra,* 85 Cal.App.4th at pp. 416–417.) Neither party raises any issues relating to section 8102 and its attendant procedures in this appeal.

B.    *Todd's Evidence*[5]

Todd testified that he was not contesting the fact that the police found him hanging with a belt around his neck after he had tried to take his life. Todd explained that after he argued with his wife that day, she left, and he had overwhelming feelings of anger and believed the world did not deserve him. He called 911 because he did not want his wife to find him hanging in the home. Todd further testified that, at the time of his suicide attempt, he was seeing a pulmonologist who was treating him for sleep apnea and he was prescribed Provigil, which made him angry, irritable, and more depressed and suicidal. He believed this created "the perfect storm" that resulted in him trying to kill himself.

Todd conceded he had been hospitalized in the past for "major depression" and suicidal ideation, but stated he only tried to act on his ideation in the instant case that led to his involuntary section 5150 hold.

Regarding his prior hospitalizations, Todd testified that in 2010 he was hospitalized for depression and because he had thoughts of jumping in front of a car. These thoughts were the result of an incident that occurred while Todd was working as a nurse at a residential facility for the elderly. A resident had a psychotic break and ran onto a busy four lane road. Todd chased him, and they weaved through traffic for about 45 minutes, until Todd was able to pin his arms and remove him from the street. Todd suffered from significant post-traumatic stress as a result of the incident and believed that

---

[5]    Todd declined the court's offer to have a court-appointed physician evaluate him and provide testimony at the hearing. The court noted that such an evaluation was an "alternate procedure" and "optional." Todd, however, provided a letter from his own psychiatrist, dated June 23, 2021, stating that Todd "is not presenting as a danger to self or others at this time." The letter was admitted into evidence.

if he faced his deepest fear of being hit by a car, "maybe [he] wouldn't feel sad."

During cross-examination, Todd acknowledged additional hospitalizations. In September 2007, he was admitted with major depression and recurrent thoughts of suicide. He was having marital issues and had difficulty with a worker's compensation claim. He did not remember if he told the intake nurse that he thought about "putting a gun to [his] head in the late '80s." In October 2007 he was admitted for acute depression. He reported that he was "losing it" and thought about ending his life. He had significant medical issues at the time and felt like a burden on his family. He "didn't want [his wife] to be burdened with taking care of [him] or going through all" of their money. In January and February of 2008, Todd was admitted to the hospital with suicidal ideation, including statements that he wanted to hang himself. Todd did not recall being admitted for suicidal threats in July 2008, although he did not deny that it happened.

Todd testified he is currently under treatment with his psychiatrist for depression and post-traumatic stress disorder (PTSD), and that he sees his psychiatrist every 90 days. Todd takes Cymbalta for depression and nerve pain, and Lamictal as a mood stabilizer. He said he has not had any suicidal thoughts since his attempt in 2017.

Todd and his wife have coped through attending Bible study groups, while the pandemic has helped him to be more resourceful, spending time listening to music and doing puzzles. He admitted he still has many medical conditions, and is in constant pain which "contribute[s] to [him] feeling down." He further explained that having chronic severe pain that appeared incurable "could grind on" him and that he is currently seeing a pain specialist and taking Norco three times a day.

6

Todd pointed out he has possessed firearms for many years, but has never attempted suicide with firearms. He had been a medic in the Air Force where he was trained to use a weapon, but stated that a firearm was "the last thing you want to use." He had never pointed a gun at anyone, even jokingly, and had never pulled out a gun in the heat of an argument. He hardly ever thought about his guns; "[t]hey just kind of laid there and . . . gathered dust."

At the conclusion of the hearing, the court commended Todd for his military service, his candor, and further recognized that Todd had confronted many physical and mental challenges throughout his life. The court then found, "by the slimmest of margins" that the People had met their burden of proving that Todd would not be likely to use firearms in a safe and lawful manner. As such, the court denied Todd's petition.

Todd timely appealed the trial court's order.[6]

## DISCUSSION

Todd contends the trial court's refusal to lift the five-year prohibition against his firearms possession, was unsupported by substantial evidence, and further contends that section 8103 is constitutionally infirm. As discussed below, we find no merit in the first contention and deem the second contention forfeited by virtue of Todd's failure to raise it in the trial court.

---

[6] In his opening brief, Todd states that the trial court's order is appealable because it arises out of a "special proceeding" under Code of Civil Procedure section 21, and section 8103 does not prohibit appeals. We agree. (See *Mary H.*, *supra*, 5 Cal.App.5th at p. 254 [concluding superior court order denying relief from section 8103 firearm prohibition is appealable].)

I.      *Governing Statutory Law*

Sections 5150 and 5151 permit a person to be taken into custody and detained for 72 hours when there is probable cause he or she is a danger to himself or others as a result of a mental disorder.[7] (*People v. Keil* (2008) 161 Cal.App.4th 34, 38 (*Keil*).)  Section 8103, subdivision (f) provides that when a person is admitted into a mental health facility under these sections, the individual may not own, possess, control, receive, or purchase firearms for five years after release from the facility.  (§ 8103, subd. (f)(1).)

However, the individual may request a hearing to lift this prohibition. (§ 8103, subd. (f)(3), (5); *People v. Keil, supra*, 161 Cal.App.4th at p. 38.)  The People "bear the burden of showing by a preponderance of the evidence that the person would not be likely to use firearms in a safe and lawful manner." (§ 8103, subd. (f)(6).)  If the court finds that the People have not met their burden, the restriction is removed and the person shall be entitled to own, possess, control, receive or purchase firearms, unless another legal restriction applies.  (§ 8103, subd. (f)(1).)

---

[7]     Section 5150 provides:  "When a person, as a result of a mental health disorder, is a danger to others, or to himself or herself, or gravely disabled, a peace officer, professional person in charge of a facility designated by the county for evaluation and treatment, member of the attending staff, as defined by regulation, of a facility designated by the county for evaluation and treatment, designated members of a mobile crisis team, or professional person designated by the county may, upon probable cause, take, or cause to be taken, the person into custody for a period of up to 72 hours for assessment, evaluation, and crisis intervention."
        Section 5151 states:  "If the facility designated by the county for evaluation and treatment admits the person, it may detain the person for evaluation and treatment for a period not to exceed 72 hours."

II.     *The Trial Court's Order Denying Todd's Petition is Supported by Sufficient Evidence*

Todd challenges the sufficiency of the evidence to support the court's factual conclusion that he would not be likely to use firearms in a safe and lawful manner. In reviewing this contention, we apply the substantial evidence standard (*Keil, supra*, 161 Cal.App.4th at p. 38), which requires that we "affirm if 'substantial evidence supports the court's determination that return of the firearms to appellant would be likely to result in endangering appellant or other persons.'" (*Ibid*.) We view the record in a light most favorable to the ruling—i.e., resolving all evidentiary conflicts and drawing all reasonable inferences in support of the court's decision. (*Jason K., supra*, 188 Cal.App.4th 1545, 1553.)

The record contains sufficient evidence supporting the court's denial of Todd's petition. Over a ten-year period, Todd had multiple hospital admissions, each with reports of suicidal thoughts in addition to his one unsuccessful attempt. In September 2007, he specifically discussed ending his life by attaching a tube to his exhaust and putting it through the car window. Todd was admitted three times the next year with suicidal ideations, including saying he wanted to hang himself. In 2010, he was admitted as a result of depression and PTSD stating he had thought about jumping in front of a car to end his life. This significant and lengthy history was more than sufficient to support the trial court's conclusion. Indeed, had Todd's previous hospital admissions been involuntary, as opposed to

voluntary, he could have been statutorily banned from owning or possessing firearms for the remainder of his life. (§ 8103, subd. (f)(1)(B).)[8]

Even without this history, the events that led to the involuntary hold here would have been sufficient to support the court's decision. (*Keil,* s*upra,* 161 Cal.App.4th at pp. 38–39 [a single incident leading to an involuntary commitment can support a section 8103, subd. (f) finding].) Todd had attempted to kill himself by tying a belt around his neck and around a doorknob, but was unsuccessful. He passed out, and the police eventually cut him down. This single incident of a sincere attempt to take his own life was sufficient to support the court's ruling. (See *Jason K., supra,* 188 Cal.App.4th at p. 1554 [medical diagnosis of a "single episode" of severe depression and threat to kill self was sufficient].)

Todd suggests that because he never used a firearm or threatened to use a firearm in connection with his suicidal thoughts, he should not be prohibited from possessing firearms. However, the use of a firearm is not a necessary prerequisite to deny relief. (See *Mary H., supra,* 5 Cal.App.5th at p. 262 [substantial evidence where a woman was hospitalized after purposely overdosing and had tried to kill herself the same way four previous times].) To the extent Todd points out that he testified he would "never harm anyone with firearms" and that the trial court found him to be "very candid" and "honest[,]"[9] this does not, as Todd contends, render the trial court's ultimate decision devoid of substantial evidence.

---

[8] Under section 8103, subdivision (f)(1)(B), a person with more than one involuntary detention under section 5150 within one year is permanently prohibited from owning or possessing a firearm. (§ 8103, subd. (f)(1)(B).)

[9] Specifically, the trial judge told Todd, "I want to commend you for your honesty. I think you've been very candid."

First, although Todd may have sincerely believed that he would not resort to a firearm in any future suicide attempt, the trial court could have reasonably found that he would be likely to do so. The record—viewed in the light most favorable to the ruling—shows that Todd had expressed at least three specific ways of killing himself over the years—hanging, car exhaust, and jumping in front of a car. Second, although Todd did not remember telling an intake nurse during a prior hospitalization that he thought about "putting a gun to [his] head in the late '80s," he did not deny that the statement was made, nor that the statement was reflected in his medical records. Third, in testifying to his previous hospitalizations, Todd also made the following remarks: "A lot of times, they would ask, you know, if you would decide to kill yourself, how would you do it? Well, I'd hang myself—or I'd take pills or I'd take, you know, or, you know, *whatever number of different things you can do to end your life*." (Italics added.) Fourth, during his testimony Todd acknowledged several significant stressors in his life, stating that he still presently suffers from chronic pain which could cause him to feel down and "grind" on him. He further indicated that he "[doesn't] have any friends" and that "[e]ven conversations with [his] parents now are strained." (See *Jason K., supra*, 188 Cal.App.4th at p. 1554 [noting previous threat to kill self could occur again—especially since some of the stressors remained present].)[10]

In light of the aforementioned evidence, and Todd's lengthy history of depression and suicidal ideation, it was reasonable for the court to believe

---

[10] Todd also testified that since his suicide attempt, he still "won't go and walk around [his] neighborhood" and that his "life is usually spent in [his] bedroom" where he does not "bother anybody." As to the latter statement, we note that police found one firearm in a safe in Todd's home but the other under the bed in his bedroom.

that Todd was at risk for using a firearm in an unsafe manner. Given that Todd's most recent attempt by hanging failed, the court could reasonably conclude that he would be inclined to choose a more reliable method to ensure success. (See *Mai v. United States* (9th Cir. 2020) 952 F.3d 1106, 1116 [observing that "'[a] suicide attempt with a firearm rarely affords a second chance'" and that "'the availability of lethal means . . . can make the difference between life and death'"].)

In sum, while there is contrary evidence in the record that may have also supported the trial court granting Todd's petition, we conclude that the trial court could have reasonably found that the People carried their burden of proving, by a preponderance of the evidence, that Todd "would not be likely to use firearms in a safe and lawful manner." (§ 8103, subd. (f)(6).)

III. *Todd Forfeited his Constitutional Challenge to Section 8103 by Failing to Raise it in the Trial Court*

Todd contends that section 8103, subdivision (f) is unconstitutional as the statute infringes on his fundamental Second and Fourteenth Amendment right to bear arms.[11] Specifically, he asserts the law is invalid because it does not require a judicial determination prior to revoking his rights, and because once a person requests that the prohibition be lifted, a hearing may not be held for up to 150 days. Todd acknowledges that he raised no such objection or challenge below, but argues that the issue should not be deemed forfeited because any objection would have been futile. Todd further points out that he represented himself in the proceedings below, and urges us to exercise our discretion to address his claim because it implicates important constitutional

---

[11] Although Todd states at the outset of his argument that he intends to challenge the statute both facially and as applied to him, he provides no argument to evaluate the statute as applied to him.

12

rights.  As explained below, we decline the request and deem the issue forfeited.

First, to support his claim of futility, Todd states that the trial court lacked authority to declare the statute unconstitutional.  However, in so arguing, Todd relies on a section of the California Constitution that prohibits *administrative agencies* from declaring a statute unconstitutional or refusing to enforce it unless an appellate court has first declared it unconstitutional. (Cal. Const., art. III, § 3.5; see *Burlington Northern & Santa Fe Ry. Co. v. Public Utilities Commission* (2003) 112 Cal.App.4th 881, 886.)  This section is, of course, inapplicable to the superior court as it is not an administrative agency.  (See, e.g., Cal. Const., art. VI, § 1 ["The judicial power of this State is vested in the Supreme Court, courts of appeal, and superior courts, all of which are courts of record"]; cf. *People v. Burhop* (2021) 65 Cal.App.5th 808, 812 [noting the superior court initially denied a resentencing petition on the ground the law was unconstitutional].)  Second, the fact that Todd represented himself in the trial court proceedings does not exempt him from the procedural requirements for preserving claims for appellate review. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247 ["[A]s is the case with attorneys, pro. per. litigants must follow correct rules of procedure"].)  Third, and finally, we decline Todd's invitation to exercise our discretion to address his constitutional challenges for the first time on appeal, finding no persuasive reason for doing so in this instance.  (See *In re S.B.* (2004) 32 Cal.4th 1287, 1293 [observing that an appellate court's discretion to excuse forfeiture "should be exercised rarely"]; cf. *Folsom Police Dept. v. M.C.* (2021) 69 Cal.App.5th 1052, 1060 [refusing to consider constitutional challenge to § 8102 for the first time on appeal].)

## DISPOSITION

The order denying Todd's request for relief from the section 8103, subdivision (f) firearm prohibition is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                                      WILLHITE, Acting P. J.

We concur:


COLLINS, J.


CURREY, J.