TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 23-701 |
| of | : | |
| | : | July 31, 2025 |
| ROB BONTA | : | |
| Attorney General | : | |
| | : | |
| KARIM J. KENTFIELD | : | |
| Deputy Attorney General | : | |

The HONORABLE MYRIAM BOUAZIZ, DIRECTOR OF THE OFFICE OF TAX APPEALS, has requested an opinion on a question relating to the Office's authority.

### QUESTION PRESENTED AND CONCLUSION

When adjudicating a taxpayer appeal, does the Office of Tax Appeals have the authority to issue a written opinion in which it concludes that applying a particular tax regulation—promulgated by a different state agency and approved by the Office of Administrative Law—to that taxpayer's circumstances would conflict with governing statutes and to decline to apply the regulation to the taxpayer on that basis?

When adjudicating a taxpayer appeal, the Office of Tax Appeals has the authority to issue a written opinion in which it concludes that applying a particular tax regulation to that taxpayer's circumstances would conflict with governing statutes and to decline to apply the regulation to the taxpayer on that basis. In making this determination, the Office must afford appropriate deference to the agency that promulgated the regulation. The Office has no authority to remove a regulation from the California Code of Regulations, or to enforce its view of a regulation's validity or applicability outside the context of adjudicating a particular taxpayer appeal.

1

23-701

## BACKGROUND

This opinion concerns several administrative bodies that collectively administer numerous state taxes and fees. The California Constitution establishes the Board of Equalization (Board) as a state administrative agency.[1] The Board consists of five voting members, including the state Controller and four members elected by district.[2] The Constitution and state statutes require the Board to administer certain tax programs, including taxes on property, insurers, and alcoholic beverages.[3]

Relevant here, the Board was previously charged with several additional statutory duties. For decades, the Board administered dozens of business taxes and fees, including the State's sales and use taxes.[4] The Board also acted as an administrative appeals body, hearing taxpayer challenges to its tax and fee assessments. Taxpayers who disagreed with a Board assessment could receive two levels of review: first before the Board's Appeals Division, and then before the Board itself.[5]

The Board also previously heard appeals concerning taxes administered by a second administrative body, the Franchise Tax Board (FTB). Located within the Government Operations Agency, FTB administers the State's franchise and income taxes.[6] Taxpayers who disagreed with an FTB tax assessment could appeal to the Board for an independent adjudication of the dispute. In such appeals, the Board allowed taxpayers to argue that FTB regulations that affected their tax liability were inconsistent

---

[1] Cal. Const., art. XIII, § 17; see Gov. Code, § 15600, subd. (a); Cal. State Board of Equalization, About BOE, https://www.boe.ca.gov/info/about.htm (as of July 30, 2025); 93 Ops.Cal.Atty.Gen. 70, 76 (2010).

[2] Cal. Const., art. XIII, § 17.

[3] See Cal. Const., art. XIII, §§ 11, 18-19, 28; *id.*, art. XX, § 22; see also Gov. Code, § 15600, subd. (b).

[4] See Cal. State Board of Equalization, History & Milestones of the State Board of Equalization, https://www.boe.ca.gov/info/milestones.htm (as of July 30, 2025); 108 Ops.Cal.Atty.Gen. 12, 14 (2025).

[5] See former Cal. Code Regs., tit. 18, § 5260 et seq. All references to the Board's former regulations are to the regulations in effect in 2017 when the Legislature established the Office of Tax Appeals.

[6] See Gov. Code, § 15700 et seq.; Rev. & Tax Code, § 18401 et seq. The Government Operations Agency is an executive agency that "oversees and supports the work of 13 departments, boards, and offices." (Cal. Government Operations Agency, About the California Government Operations Agency, https://www.govops.ca.gov/about-the-california-government-operations-agency/ (as of July 30, 2025).)

2

with governing statutes. If the Board agreed, it would apply the statute, and not the regulation, in determining the taxpayer's liability.[7]

In 2017, the Legislature expressed concern that the Board's "operational culture" had led to "inappropriate interventions by board members in administrative and appeal-related activities."[8] In the Legislature's view, these problems had resulted in "inconsistencies in operations," "activities contrary to state law," and "significant errors."[9] To "restore the public's trust," the Legislature transferred most of the Board's statutory responsibilities to two new state administrative bodies.[10]

First, the Legislature created the California Department of Tax and Fee Administration (CDTFA).[11] The Legislature transferred to CDTFA the Board's statutory duty to administer certain business taxes and fees, including the sales and use taxes.[12] Like the Board before it, CDTFA is authorized to enact regulations implementing these tax and fee programs.[13] The Board remains responsible for the taxes that it is constitutionally obligated to administer.[14]

Second, the Legislature established the Office of Tax Appeals (OTA), an "independent and impartial appeals body" located within the executive branch.[15] The Legislature transferred to OTA all of the Board's statutory "duties, powers, and responsibilities . . . necessary or appropriate to conduct appeals hearings."[16] A taxpayer

---

[7] See, e.g., *In the Matter of the Appeal of Save Mart Supermarkets & Subsidiary* (Bd. Eq. 2002) 2002 WL 245682, pp. *2-*4 (agreeing with taxpayer that FTB regulation was inconsistent with the statute and declining to apply it in determining taxpayer's liability).

[8] Stats. 2017, ch. 16 (AB 102) § 2, subds. (d), (e).

[9] *Id.*, subds. (e), (i).

[10] *Id.*, subd. (j).

[11] Gov. Code, § 15570, subd. (a) (creating CDTFA within the Government Operations Agency).

[12] See Gov. Code, § 15570.22; Rev. & Tax Code, § 20, subd. (a); see also Cal. Department of Tax and Fee Administration, About CDTFA, https://www.cdtfa.ca.gov/about.htm (as of July 30, 2025).

[13] Gov. Code, § 15570.40, subd. (a); see, e.g., Rev. & Tax Code, §§ 7051, 8251, 30451, 38701; see *id.*, § 20, subd. (a).

[14] See Gov. Code, § 15600, subd. (b).

[15] Office of Tax Appeals, https://ota.ca.gov/about/ (as of July 30, 2025); see Gov. Code, § 15670.

[16] Gov. Code, § 15672, subd. (a); see *id.*, § 15674; see also Rev. & Tax Code, § 20, subd. (b) (defining "board" "with respect to an appeal" as the Office of Tax Appeals).

3

who disagrees with CDTFA's assessment of taxes or fees can appeal to OTA and receive an independent adjudication of the dispute.[17]  A taxpayer who disagrees with an FTB assessment can likewise challenge its determination in an OTA appeal.[18]

In creating OTA, the Legislature sought to establish "an independent, objective" appeals process before adjudicators with "a sole focus on tax issues."[19]  Taxpayer appeals are generally decided by a three-member panel consisting of persons possessing "knowledge and experience" concerning state and federal tax and fee laws.[20]  Panel members must agree to abide by "ethics standards," "including rules governing conflicts of interest and ex parte communication."[21]  And panels must operate independently, deciding appeals free from involvement of the OTA Director.[22]

The OTA appeals process allows panels to carefully adjudicate taxpayer disputes. Both the taxpayer and the adverse tax agency—CDTFA or FTB—may file briefs explaining their view of the relevant law and facts.[23]  At the panel's discretion, other parties may file amicus briefs as well.[24]  After briefing is complete, taxpayers are entitled to a hearing, which the OTA panel must generally conduct in accordance with the Administrative Procedure Act.[25]  Taxpayers may be represented by an attorney or a non-attorney, such as an accountant.[26]  After considering the issues, the OTA panel must issue a written opinion explaining its decision.[27]  OTA opinions, which can be deemed precedential, may include "findings of fact, a statement of the legal issue(s) presented, applicable law, analysis," and the panel's holding.[28]  Panel members may also issue

---

[17] See Cal. Code Regs., tit. 18, § 30103, subd. (b).

[18] *Id.*, subd. (a).

[19] Stats. 2017, ch. 16 (AB 102) § 2, subd. (b).

[20] Gov. Code, § 15670, subd. (c).  Taxpayers with smaller amounts in dispute may choose to have their appeals heard by a single adjudicator.  (See *id.*, § 15676.2; Cal. Code Regs., tit. 18, §§ 30209.05-30209.1.)

[21] Gov. Code, § 15670, subds. (c)(1), (d).

[22] Gov. Code, § 15670, subd. (b)(2).

[23] See Cal. Code Regs., tit. 18, §§ 30301-30316.

[24] See Cal. Code Regs., tit. 18, § 30302, subd. (g).

[25] See Gov. Code, § 15674, subd. (a)(3); Cal. Code Regs., tit. 18, § 30216.

[26] Gov. Code, § 15676; Cal. Code Regs., tit. 18, § 30211, subd. (a).

[27] Gov. Code, §§ 15674, subd. (a)(2), 15675; Cal. Code Regs., tit. 18, § 30501, subd. (a).

[28] Cal. Code Regs., tit. 18, § 30501, subd. (b); see *id.*, § 30502.

4

concurring or dissenting opinions, and either party can ask the panel to reconsider.[29] A taxpayer who disagrees with the final decision may seek de novo review in superior court by paying the disputed tax then suing for a refund.[30]

OTA is authorized to issue regulations governing the appeals process.[31] In April 2023, OTA proposed a regulatory amendment providing that taxpayers could not challenge the validity of a tax regulation in an OTA appeal, even if the regulation affected the amount of tax owed (unless an appellate court had already declared the regulation invalid).[32] The proposal would have reversed the Board's prior practice of allowing taxpayers to challenge the application of a regulation to their particular circumstances. OTA ultimately withdrew the proposal after receiving public comments arguing that it conflicted with governing law.

OTA then submitted this opinion request, asking whether its panels have the authority to hear challenges to regulations promulgated by FTB or CDTFA.[33] The request explains why, in OTA's view, its panels do not have that authority. FTB and CDTFA have taken the same position in litigation before OTA panels.[34] In contrast, we received public comments arguing that OTA panels can hear challenges to tax regulations.

---

[29] Cal. Code Regs., tit. 18, §§ 30501, subd. (d), 30601-30608.

[30] See Gov. Code, § 15677 (de novo review in taxpayer suit); see, e.g., Rev. & Tax Code, §§ 19382, 19385 (refund suit against FTB); *id.*, § 6933 (refund suit against CDTFA for sales or use tax).

[31] See Gov. Code, §§ 15679, 15679.5.

[32] See Prop. Cal. Code Regs., tit. 18, § 30104, subd. (d), available at OTA's Rules for Tax Appeals, OAL File No. 2023-0526-02FP, Documents for First Notice of Proposed Rulemaking, https://ota.ca.gov/regulations/ (as of July 30, 2025).

[33] All references to CDTFA regulations include regulations originally issued by the Board in areas that CDTFA now administers, such as the sales and use taxes.

[34] To date, OTA panels have concluded that they cannot hear challenges to tax regulations, over a dissent in one case. (Compare *In the Matter of the Appeal of: Bed Bath & Beyond Inc.* (OTA 2022) No. 18011340, 2022 WL 1479162, p. *4 ["[OTA] lacks the authority to invalidate FTB's regulations"], with *id.*, at p. *10 (H. Le, dis. and conc., in part) ["When a regulation is inconsistent with controlling law (existing statutes, court decisions, or other law provisions), I believe OTA must follow controlling law"]; see also, e.g., *In the Matter of the Appeal of: Janus Capital Group, Inc. and Subsidiaries* (OTA 2023) No. 20096605, 2023 WL 5934944, pp. *2-*3 [OTA lacked authority to hear challenge to FTB regulation]; *In the Matter of the Appeal of: Alfredo J. Talavera* (OTA 2020) No. 18011825, 2020 WL 3629619, p. *4 [same for CDTFA regulation].)

23-701

**ANALYSIS**

We conclude that, in adjudicating taxpayer appeals, an OTA panel can evaluate whether applying a tax regulation to the taxpayer's circumstances would conflict with applicable statutes. If so, then the panel can decline to apply the regulation in determining the taxpayer's liability. We first explain why OTA's governing statute confers such authority. We then discuss the requestor's concerns that allowing panels to adjudicate challenges to regulations would conflict with the California Administrative Procedure Act (APA) and the state Constitution.

**The Legislature Authorized OTA Panels to Adjudicate Challenges to Tax Regulations.**

"[A]dministrative agencies have only such powers as have been conferred on them, expressly or by implication, by constitution or statute."[35] Here, the Legislature generally conferred on OTA panels all adjudicative authority previously held by the Board of Equalization.[36] We must therefore determine whether, at the time of OTA's creation, the Board was authorized to consider whether a tax regulation may lawfully be applied in particular circumstances.

### *The Board of Equalization was authorized to hear challenges to tax regulations.*

As described above, the Board was previously authorized to hear administrative appeals concerning both the taxes it assessed, and the taxes assessed by the Franchise Tax Board. Both the Board and FTB were authorized to enact regulations implementing the taxes each agency administered. In some cases, the Board or FTB would have relied on a regulation to determine the tax owed. A taxpayer who believed that applying the regulation to their circumstances would conflict with governing statutes sometimes sought to challenge the regulation during an administrative appeal before the Board. We conclude that, in hearing those appeals, the Board was authorized to adjudicate such challenges to both its own regulations and regulations promulgated by FTB. That conclusion is supported by the Board's jurisdictional regulations, its longstanding administrative practice, the California Administrative Procedure Act, and California Supreme Court precedent.

To begin with, we read the Board's regulations defining its appeals jurisdiction as authorizing statutory challenges to tax regulations. As to the taxes and fees the Board itself administered, the regulations placed no limits on the issues that could be raised

---

[35] *Ferdig v. State Pers. Bd.* (1969) 71 Cal.2d 96, 103.

[36] Gov. Code, § 15672, subd. (a) (vesting OTA with "all of the duties, powers, and responsibilities of the [Board] necessary or appropriate to conduct appeals hearings" for the taxes and fees at issue here).

23-701

during an appeal.[37]  The regulations stated, for example, that a taxpayer could "present oral arguments regarding issues of fact and law relevant to the taxpayer's appeal."[38]  Where a Board regulation was relevant to the taxpayer's assessed liability, adjudicating a statutory challenge to the regulation's validity as applied to the taxpayer was therefore within the scope of the Board's authority.

As to FTB assessments, the Board's "jurisdiction [was] limited to determining the correct amount owed by, or due to, the [taxpayer] for the year" at issue.[39]  If an FTB regulation was determinative of a taxpayer's assessed liability, adjudicating a statutory challenge to the regulation's application to the taxpayer was thus within the "Board's jurisdiction" as it would have "determin[ed] the correct amount owed by, or due to, the" taxpayer.[40]  Moreover, while taxpayers were specifically prohibited from challenging FTB "regulation[s] . . . under the Federal or California Constitutions," there was no similar limitation as to challenges under the governing statute.[41]  The fact that the jurisdictional rules expressly contemplated challenges to FTB regulations—but only prohibited those made on constitutional grounds—strongly suggests that the Board was authorized to hear challenges made on statutory grounds.[42]

Consistent with its jurisdictional regulations, the Board itself determined that it could adjudicate claims by taxpayers that applying a tax regulation to their circumstances would conflict with a governing statute.  For more than half a century, the Board entertained such claims across numerous appeals.[43]  In most cases, it upheld the validity

---

[37] See former Cal. Code Regs., tit. 18, § 5510 et seq.; e.g., *id.*, § 5511, subd. (a) (defining "appeal" without limiting available issues); *id.*, § 5523.4 (same for briefing rules); *id.*, § 5551, subds. (a), (b) (same for rules governing how Board would "decide an appeal").

[38] Former Cal. Code Regs., tit. 18, § 5511, subd. (e).

[39] Former Cal. Code Regs., tit. 18, § 5412, subd. (b).

[40] *Ibid.*

[41] Former Cal. Code Regs., tit. 18, § 5412, subd. (b), (b)(1) ("The Board has determined that it does not have jurisdiction to consider . . . [w]hether a California . . . regulation is invalid or unenforceable under the Federal or California Constitutions, unless a federal or California appellate court has already made such a determination").

[42] See generally *In re J.W.* (2002) 29 Cal.4th 200, 209 (under expressio unius principle, "the expression of one thing in a statute ordinarily implies the exclusion of other things").

[43] See, e.g., *In the Matter of the Appeal of Katherine M. Rockhold* (Bd. Eq. 1942) 1942 WL 392, pp. *2-*4; *In the Matter of the Appeal of Elizabeth Brown McCombie* (Bd. Eq. 1951) 1951 WL 382; *In the Matter of the Appeals of George French, Jr., and Mary E. French* (Bd. Eq. 1958) 1958 WL 1284, p. *2; *In the Matter of the Appeal of Frank P. Chiappara* (Bd. Eq. 1979) 1979 WL 4174, pp. *1-*2; *In the Matter of the Appeal of*

(continued…)

7

of the challenged regulation. But on at least two occasions, the Board concluded that applying an FTB regulation to the taxpayer's circumstances would conflict with a statute—for example, because the regulation "alter[ed] and enlarge[d] on the words of the statute"—and therefore declined to apply the regulation in adjudicating the appeal.[44]

The Board explained the source of that authority in a 2005 decision, *In the Matter of the Appeal of: Safeway, Inc.*[45] "The duty to hear and determine franchise tax appeals," it stated, "implies the duty to apply the appropriate law to the facts."[46] That required the Board to determine what law applied to the taxpayer's circumstances by "interpret[ing] statutes and [tax] regulations."[47] And under Government Code section 11342.2, part of the Administrative Procedure Act, a regulation is not "valid or effective" if it is "in conflict with the [governing] statute."[48] Accordingly, to determine the correct law to apply to a taxpayer's case, the Board concluded that it was necessary to adjudicate the statutory validity of any relevant regulations. In making that determination, the Board afforded appropriate deference to the view of the promulgating agency, just as a court would do on judicial review.[49] But if the Board concluded that a regulation could not be reconciled with the statute in the given circumstances, then it applied the statute and not the regulation in adjudicating the appeal.[50]

---

*Willamette Industries, Inc.* (Bd. Eq. 1987) 1987 WL 50176, pp. *2-*3; *In the Matter of the Appeal of Northridge Fashion Center, Inc.* (Bd. Eq. 1989) 1989 WL 132763, p. *2; *In the Matter of the Appeal of: Mid-State Bancshares* (Bd. Eq. 2011) 2011 WL 2440648.

[44] *In the Matter of the Appeal of Save Mart Supermarkets & Subsidiary*, *supra*, 2002 WL 245682, at p. *3; see also *In the Matter of the Appeal of Standard Oil Company of California* (Bd. Eq. 1983) 1983 WL 15454, pp. *18-*19.

[45] *In the Matter of the Appeal of: Safeway, Inc.* (Bd. Eq. 2005) 2005 WL 3530181, p. *5.

[46] *Ibid.*

[47] *Ibid.*

[48] *Ibid.*, quoting Gov. Code, § 11342.2 ("Whenever by the express or implied terms of any statute a state agency has authority to adopt regulations to implement, interpret, make specific or otherwise carry out the provisions of the statute, no regulation adopted is valid or effective unless consistent and not in conflict with the statute and reasonably necessary to effectuate the purpose of the statute").

[49] See, e.g., *In the Matter of the Appeal of Save Mart Supermarkets & Subsidiary*, *supra*, 2002 WL 245682, at p. *3 (applying the deference framework articulated in *Yamaha Corp. of America v. State Board of Equalization* (1998) 19 Cal.4th 1); *In the Matter of the Appeal of: Mid-State Bancshares*, *supra*, 2011 WL 2440648, at p. *5 (same).

[50] See, e.g., *In the Matter of the Appeal of Save Mart Supermarkets & Subsidiary*, *supra*, 2002 WL 245682, at p. *4.

23-701

The Board's analysis of section 11342.2 is consistent with California Supreme Court precedent holding that agencies can adjudicate challenges to regulations in an administrative appeal. In *Woods v. Superior Court*, the Department of Social Services had applied its regulations to deny an application for welfare benefits.[51] The Supreme Court held that the disappointed applicants could "contest the validity of a regulation which mandates the denial of [their] application both in the [administrative appeal] and in the subsequent judicial review."[52] The agency's decision denying benefits "places in issue the validity of the regulations pursuant to which relief was denied."[53] And the regulations could be challenged during the administrative appeal because the governing statute "impose[d] no limitation, factual or legal, upon the issues which may be raised."[54]

The Court rejected the agency's argument that allowing "an attack on the validity of [its] regulations" in an administrative appeal would be futile because "an administrative agency is compelled to enforce its own regulations."[55] To the contrary, the Court explained, both "precedent and common sense" confirmed that "an *invalid* regulation *should* be vulnerable to attack at the administrative level."[56] The Court emphasized that under Government Code section 11342.2—the APA provision relied on by the Board in *Appeal of Safeway*, described above—"no regulation . . . is valid or effective unless consistent and not in conflict with the statute."[57] Accordingly, "administrative regulations which exceed the scope of the enabling statute are invalid and have no force or life."[58]

On a practical level, the Court recognized that prohibiting agencies from hearing challenges to regulations would "require the invocation of a judicial remedy in all such cases."[59] That result would be "ill-advised," as the "courts should not be burdened with matters which can be adequately resolved in administrative fori."[60] Allowing agencies to

---

[51] *Woods v. Superior Ct.* (1981) 28 Cal.3d 668, 671-672.

[52] *Id.* at p. 677.

[53] *Id.* at p. 676.

[54] *Id.* at p. 674.

[55] *Id.* at p. 680.

[56] *Ibid.*, italics in original.

[57] Gov. Code, § 11342.2.

[58] *Woods v. Superior Ct.*, *supra*, 28 Cal.3d at p. 680, citing, e.g., *Bright v. Los Angeles Unified Sch. Dist.* (1976) 18 Cal.3d 450, 459-464; *Cooper v. Swoap* (1974) 11 Cal.3d 856, 864-865; *California Welfare Rights Organization v. Brian* (1974) 11 Cal.3d 237, 239, 242-243; *In re Jordan* (1972) 7 Cal.3d 930, 939.

[59] *Woods v. Superior Ct.*, *supra*, 28 Cal.3d at p. 680.

[60] *Ibid.*

9

consider such challenges, the Court explained, "serves the twin goals of avoiding delay and unnecessary expense in vindication of legal rights."[61]  And even where the validity of a regulation must ultimately "be judicially resolved, the task of a reviewing court is simplified by a narrowing and clarification of the issues in an administrative hearing."[62]  The Court therefore concluded that "[i]nvalid regulations need not be applied or enforced" by the agency in its administrative hearings.[63]  Applying *Woods*, the Court of Appeal has similarly held that the California Air Resources Board can adjudicate challenges to its regulations in an administrative hearing.[64]

We see no persuasive basis to distinguish these authorities here.  As in *Woods*, an assessment of taxes by the Board or FTB would have "place[d] in issue the validity of the regulations pursuant to which" tax liability was imposed.[65]  And as in *Woods*, taxpayers who disagreed with the application of such a regulation to their circumstances could challenge it in an administrative appeal.  To be sure, nothing in the regulations governing such appeals expressly authorized challenges to tax regulations.  But the same was true in *Woods*.  It was enough that the agency could hear challenges to its adjudicative decisions, and that there was no relevant "limitation, factual or legal, upon the issues which may be raised."[66]  Likewise, here, the regulations governing Board appeals did not preclude statutory challenges to the application of tax regulations.[67]

The requestor argues that *Woods* is distinguishable because the agency that promulgated the regulation there also conducted the administrative hearing.  But as to appeals concerning the Board's own tax and fee assessments, the relevant circumstances were identical.  And we see no reason why the *Woods* analysis would not also have applied to appeals from FTB assessments.  The Court reasoned that a regulation "in conflict with [a] statute" is "invalid" under Government Code section 11342.2 and therefore "need not be applied" in an administrative appeal.[68]  That reasoning applies

[61] *Id.* at p. 681.

[62] *Ibid.*

[63] *Id.* at p. 682; see also *Green v. Obledo* (1981) 29 Cal.3d 126, 143, fn. 12 (reiterating *Woods*' holding).

[64] See *Harris Transportation Co. v. Air Res. Bd.* (1995) 32 Cal.App.4th 1472, 1479.

[65] *Woods v. Superior Ct.*, *supra*, 28 Cal.3d at p. 676.

[66] *Woods v. Superior Ct.*, *supra*, 28 Cal.3d at p. 674; see also, e.g., *Harris Transportation Co. v. Air Res. Bd.*, *supra*, 32 Cal.App.4th at p. 1477.

[67] See *ante*, fns. 37-42.

[68] *Woods v. Superior Ct.*, *supra*, 28 Cal.3d at pp. 680-682, citing Gov. Code, § 11342.2 (regulations that are "in conflict" with the enabling statute are not "valid or effective");

(continued…)

10

equally whether the agency adjudicating the appeal promulgated the challenged regulation or not. The same is true of the Court's analysis of "practical effect[s]": allowing challenges to regulations at the administrative stage can "avoid[] delay and unnecessary expense," while aiding judicial review by "narrowing and clarif[ying]" the issues.[69] Indeed, the latter concern is particularly salient in the highly technical tax context, where the Court has emphasized the importance of administrative exhaustion to "obtain the benefit of the [agency's] expertise, permit it to correct mistakes, and save judicial resources."[70] As in *Woods*, adjudicating challenges to tax regulations fell squarely within the Board's area of expertise as it required construing the same statutes and regulations the Board regularly administered.[71]

Finally, *Newco Leasing, Inc. v. State Board of Equalization*, cited by the requestor, is not relevant here. In *Newco*, the Court of Appeal stated the background principle that the Board, when performing tax assessments, must reasonably interpret tax statutes and "be faithful to its own announced regulations."[72] But *Newco* did not involve a challenge to a regulation's validity, so it does not speak to the issue here. Rather, the Supreme Court's holding in *Woods*—that "[i]nvalid regulations need not be applied or enforced" at the administrative stage—is controlling.[73]

### *In transferring the Board's duties to OTA, the Legislature did not eliminate the authority to hear statutory challenges to tax regulations.*

In 2017, the Legislature transferred the Board's statutory authority to hear taxpayer appeals to OTA. We see no evidence that, in doing so, the Legislature intended to eliminate the authority to consider challenges to the application of tax regulations. To the contrary, for the taxes and fees at issue here, Government Code section 15672 provides that OTA "is the successor to, and is vested with, *all of the duties, powers, and responsibilities* of the [Board] necessary or appropriate to conduct appeals hearings."[74] The Legislature also mandated that the Board's jurisdictional regulations would

---

see also *Verdugo Hills Hosp., Inc. v. Dep't of Health* (1979) 88 Cal.App.3d 957, 963 (applying predecessor to § 11342.2 and concluding that an agency did "not proceed[] in the manner required by law" where it "[p]roceed[ed] pursuant to an invalid regulation").

[69] *Woods v. Superior Ct.*, *supra*, 28 Cal.3d at pp. 680, 681.

[70] *Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1127.

[71] See *Burlington N. & Santa Fe Ry. Co. v. PUC* (2003) 112 Cal.App.4th 881, 889.

[72] *Newco Leasing, Inc. v. State Bd. of Equalization* (1983) 143 Cal.App.3d 120, 124.

[73] *Woods v. Superior Ct.*, *supra*, 28 Cal.3d at p. 682; see *Harris Transportation Co. v. Air Res. Bd.*, *supra*, 32 Cal.App.4th at p. 1479 ("a challenge to the legality of . . . regulations is cognizable" in an administrative hearing).

[74] Gov. Code, § 15672, subd. (a), italics added; see also *id.*, § 15674, subd. (a)(1).

"continue in force and apply to all appeals hearings."[75]  As explained above, we read those regulations to authorize statutory challenges to tax regulations.  And the Board itself had held that it could adjudicate statutory challenges to tax regulations and had adjudicated such challenges for decades.[76]  Yet the Legislature did nothing to displace or repudiate any Board decisions.[77]

In fact, the evidence suggests that the Legislature sought to reaffirm the authority to adjudicate challenges to tax regulations.  Although the Legislature left the Board's jurisdictional regulations in effect, it authorized OTA to "amend, repeal, or add to" those regulations "as necessary or appropriate to govern" OTA appeals.[78]  But the Legislature required that any such amendment be "consistent with" a 2006 Model Act governing administrative tax tribunals.[79]  And that Model Act allows taxpayers to challenge tax regulations during administrative appeals.[80]  As a result, an amendment to OTA's

---

[75] Gov. Code, § 15679.5, subd. (a) (maintaining in effect "the regulations contained in Division 2.1 of Title 18 of the California Code of Regulations," unless "in conflict with this part"); see former Cal. Code Regs., tit. 18, § 5510 et seq. (rules for administrative appeals to the Board, contained in Chapter 5 of Division 2.1); *id.*, § 5410 et seq. (rules applicable to FTB appeals to the Board, contained in Chapter 4 of Division 2.1); e.g., *id.*, § 5412 (regulation discussed above defining Board's jurisdiction in FTB appeals).

[76] See *ante*, fns. 43-50.

[77] Accord Cal. Code Regs., tit. 18, § 30504 (precedential Board opinions "may be cited as precedential authority to OTA unless OTA removes . . . the precedential status of that opinion"); cf. *California Renters Legal Advoc. & Educ. Fund v. City of San Mateo* (2021) 68 Cal.App.5th 820, 843 ("Lawmakers are presumed to be aware of long-standing administrative practice and, thus, the failure to substantially modify a provision is a strong indication the administrative practice was consistent with underlying legislative intent," internal quotation marks, alterations, and ellipses omitted).

[78] Gov. Code, § 15679.5, subd. (b)(1).

[79] *Id.*, subd. (b)(3) ("To the extent applicable and not in conflict with this part, regulatory actions adopted to carry out this subdivision shall be consistent with the Model State Administrative Tax Tribunal Act dated August 2006 adopted by the American Bar Association").  The Model Act provides a legislative template for States to "establish[] an independent tax tribunal within the executive branch of government." (Model State Administrative Tax Tribunal Act (Aug. 2006) § 1, https://www.americanbar.org/content/dam/aba/administrative/taxation/policy/aba-official-modelact-reported-8706.pdf.)

[80] The Model Act authorizes the appeals tribunal to adjudicate "questions of law and fact arising under the tax laws of this State." (Model State Administrative Tax Tribunal Act, *supra*, § 7, subd. (a).)  The validity of tax regulations would fall within this broad grant of

(continued…)

12

23-701

jurisdictional regulations that prohibited challenges to tax regulations would likely be invalid as not "consistent with" the Model Act.[81]  The Legislature's incorporation of the Model Act is further evidence of its intent for OTA panels, like the Board before them, to hear statutory challenges to tax regulations.

For these reasons, if an OTA panel determines that applying a tax regulation to the taxpayer's circumstances would "conflict with" governing statutes, it may decline to enforce the regulation against that taxpayer.[82]  In making that determination, panels must afford appropriate deference to the view of the agency that promulgated the regulation, just as a court would do on judicial review.[83]  Panels have no authority to apply their view of a regulation's validity outside the context of adjudicating a taxpayer appeal.

## The APA Does Not Bar OTA Panels from Adjudicating Challenges to Regulations.

Notwithstanding the above authorities, the requestor argues that if OTA panels adjudicate challenges to tax regulations, it would conflict with the California Administrative Procedure Act.  A 2003 opinion of the Legislative Counsel of California raised similar concerns as to the Board's authority.[84]  We see no conflict with the APA.

### *The APA's requirements for agency rulemaking do not apply here.*

The APA regulates two modes of agency action.  First, it governs the quasi-legislative process by which agencies promulgate regulations.[85]  The statute requires an agency to "give the public notice" of a regulatory proposal and "an opportunity to comment."[86]  Second, the APA governs the quasi-judicial process by which agencies

---

authority.  Indeed, the Act even authorizes the tribunal to "decide questions regarding . . . the *constitutionality* of regulations."  (*Id.*, § 7, subd. (e), italics added.)

[81] See Gov. Code, § 15679.5, subd. (b)(3).

[82] Gov. Code, § 11342.2.

[83] See *Yamaha Corp. of America v. State Board of Equalization*, *supra*, 19 Cal.4th at pp. 6-15; accord, e.g., *In the Matter of the Appeal of Save Mart Supermarkets & Subsidiary*, *supra*, 2002 WL 245682, at p. *3 (Board decision applying *Yamaha* framework to evaluate challenge to FTB regulation).

[84] See *In the Matter of the Appeal of: Safeway, Inc.*, *supra*, 2005 WL 3530181, at p. *3 & fn. 3 (describing Legislative Counsel opinion and disagreeing with its analysis).

[85] See *Tidewater Marine W., Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 568; see Gov. Code, § 11342.600 (defining "regulation" to include "every rule, regulation, order, or standard of *general application*," italics added).

[86] *Tidewater Marine W., Inc. v. Bradshaw*, *supra*, 14 Cal.4th at p. 568; see Gov. Code,

(continued…)

23-701

adjudicate the obligations of particular parties.[87]  OTA panels engage in this type of decision making—finding facts specific to the taxpayer, determining the relevant law, and applying the law to the facts.[88]  OTA panels are subject to the APA's rules governing agency adjudications; in addition, they are expressly exempted from the APA's rulemaking procedures, even if an OTA opinion is designated as precedential.[89]

Because OTA panels engage in quasi-judicial decision making, the requestor argues that they cannot adjudicate challenges to tax regulations.  In the requestor's view, if an OTA panel determines that a regulation is invalid, it would effectively *repeal* the regulation.  And repealing a regulation is a quasi-legislative action subject to the APA's rulemaking requirements.[90]  Given that OTA panels do not follow those requirements, the requestor concludes that they cannot hear challenges to regulations.

But the California Supreme Court has rejected the premise of this argument.  In *Woods*, the Court held that an agency's determination that a regulation is invalid during an administrative appeal is a "quasi-adjudicative" action—not a "quasi-legislative" one.[91]  As a result, the agency could determine a regulation's validity, even though the appeal did not follow the APA's rulemaking requirements.[92]  Likewise, here, OTA decisions remain "adjudicatory in nature" even if they determine "the validity of [tax] regulations."[93]  After all, if a court holds that a tax regulation may not lawfully be applied

---

§ 11340 et seq.; Asimow et al., Cal. Practice Guide: Administrative Law (The Rutter Group 2024) ¶ 23:1 et seq.

[87] See Asimow et al., Cal. Practice Guide: Administrative Law, *supra*, ¶ 4:1 et seq.

[88] See Gov. Code, § 11405.50 (APA definition of an adjudicative decision as "an agency action of *specific application* that determines a legal right, duty, privilege, immunity, or other legal interest of *a particular person*," italics added).

[89] See Gov. Code, § 15674, subd. (a)(3); Cal. Code Regs., tit. 18, § 30216; Gov. Code, § 15679, subd. (b).

[90] Gov. Code, § 11346, subd. (a) (APA rulemaking requirements apply to the "repeal of administrative regulations" and "shall not be superseded or modified by any subsequent legislation except to the extent that the legislation shall do so expressly").

[91] *Woods v. Superior Ct.*, *supra*, 28 Cal.3d at p. 676; see *ibid.* (claims in such an appeal "are predicated upon the existence of facts which are peculiar to" particular parties).

[92] *Id.* at pp. 676-678.  The Court evaluated the mode of agency decision making to determine the appropriate method of judicial review.  Given that the decision was adjudicative, the Court held that it was reviewable by administrative mandamus—typically used to review adjudicative agency decisions.

[93] *Id.* at p. 676; see also *Green v. Obledo*, *supra*, 29 Cal.3d at p. 143, fn. 12 (regulations can be challenged in an administrative hearing, which is adjudicatory in nature).

14

to a litigant, it is clearly acting in a judicial capacity, not a legislative one. Where an OTA panel makes an identical determination, it engages in adjudicative decision making as well. The APA's requirements for "quasi-legislative" rulemaking therefore do not apply.[94]

That conclusion is consistent with the legal effect of OTA opinions. Even if a panel declines to apply a tax regulation in an individual appeal, it has no authority to "repeal" the regulation, that is, remove it from the California Code of Regulations.[95] And although an OTA opinion concerning a regulation's application to a particular taxpayer may have precedential effect in later OTA appeals, the same is true of many other OTA decisions—for example, construing a statute or regulation. If an OTA decision interprets an ambiguous regulation, for instance, that would not constitute an "amendment" for purposes of the APA's rulemaking requirements, even if the decision is deemed precedential. Rather, as the Supreme Court has explained, agency "interpretations that arise in the course of case-specific adjudication are not regulations, though they may be persuasive as precedents in similar subsequent cases."[96]

### The APA's cause of action for declaratory relief does not affect the analysis.

Nor do we believe that allowing OTA panels to hear challenges to tax regulations would circumvent the APA's declaratory relief mechanism. Government Code section 11350(a) provides that "[a]ny interested person may obtain a judicial declaration as to the validity of any regulation . . . by bringing an action for declaratory relief in the superior court in accordance with the Code of Civil Procedure."[97] But although the section provides one path to challenge a regulation in court, it does not state that it is the *only* method to resist the application of a regulation. As the Court of Appeal has explained, the "purpose of section 11350 is not to limit the available remedies in challenging a

---

[94] Gov. Code, § 11346, subd. (a).

[95] See generally Gov. Code, § 11346 et seq. (detailed procedural requirements for an agency to remove a regulation from the California Code of Regulations); cf. *Pidgeon v. Turner* (Tex. 2017) 538 S.W.3d 73, 88, fn. 21 (where a court determines that a law is invalid and declines to apply it to a particular dispute, "the law remains in place unless and until the body that enacted it repeals it").

[96] *Tidewater Marine W., Inc. v. Bradshaw*, *supra*, 14 Cal.4th at p. 571; see also *In the Matter of the Appeal of: Safeway, Inc.*, *supra*, 2005 WL 3530181, at p. *5.

[97] Gov. Code, § 11350, subd. (a); see Code Civ. Proc., § 1060 (authorizing an action for declaratory relief in superior court); see also Asimow et al., Cal. Practice Guide: Administrative Law, *supra*, ¶¶ 22:6, 13:375; *Woods v. Superior Ct.*, *supra*, 28 Cal.3d at p. 682; see, e.g., *California Dep't of Tax & Fee Admin. v. Superior Ct.* (2020) 48 Cal.App.5th 922, 928 (discussing plaintiff's standing to challenge regulation).

15

regulation, but rather to permit any interested person . . . to test [a regulation's] validity" without first violating it.[98]

In fact, there are multiple ways to challenge a regulation.  To challenge an agency's quasi-legislative act of promulgating a regulation outside the context of a specific dispute, a party can either seek a declaratory judgment or proceed by ordinary mandamus.[99]  To challenge a regulation in the context of an agency adjudication, a party can often proceed by administrative mandamus, as the Supreme Court recognized in *Woods*.[100]  In the tax context, taxpayers who wish to challenge administrative assessments ordinarily proceed by paying the tax then suing for a refund; as part of a refund suit, taxpayers can challenge the validity of relevant tax regulations.[101]

In contrast, a taxpayer seeking to challenge a tax regulation via a declaratory relief claim under section 11350 may face obstacles.  If the taxpayer has outstanding tax liabilities, a section 11350 claim may be barred by the "pay first, litigate second" rule, which ordinarily requires a taxpayer to pay a disputed tax before seeking judicial review.[102]  Even after the tax is paid, a section 11350 claim may still be barred under the

---

[98] *Stoneham v. Rushen* (1984) 156 Cal.App.3d 302, 310; see also Code Civ. Proc., § 1062 ("The remedies provided by this chapter [authorizing declaratory relief] are cumulative, and shall not be construed as restricting any remedy, provisional or otherwise, provided by law for the benefit of any party to such action").

[99] See Gov. Code, § 11350 (declaratory judgment); Code Civ. Proc., § 1085 (ordinary mandamus); *Woods v. Superior Ct.*, *supra*, 28 Cal.3d at p. 682; see also Asimow et al., Cal. Practice Guide: Administrative Law, *supra*, ¶ 13:3 (regulations can "be reviewed by traditional mandamus, which appears to be interchangeable with declaratory relief").

[100] See *Woods v. Superior Ct.*, *supra*, 28 Cal.3d at p. 682.  Administrative mandamus is generally available to challenge "any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer."  (Code Civ. Proc., § 1094.5, subd. (a).)

[101] See *California Dep't of Tax & Fee Admin. v. Superior Ct.*, *supra*, 48 Cal.App.5th at p. 934 ("[T]axpayers with outstanding tax assessments . . . *have* an administrative and judicial forum for testing the validity of tax regulations through the tax refund procedures"); e.g., *Oliver & Williams Elevator Corp. v. State Bd. of Equalization* (1975) 48 Cal.App.3d 890 (determining validity of tax regulation in refund suit).

[102] See *California Dep't of Tax & Fee Admin. v. Superior Ct.*, *supra*, 48 Cal.App.5th at pp. 930, 933 (where taxpayer had not yet paid disputed tax, section 11350(a) claim to challenge validity of tax regulation was barred by Cal. Const., art. XIII, § 32); see also *Woosley v. State of California* (1992) 3 Cal.4th 758, 785, fn. 20 ("Government Code section 11350 . . . is strictly construed in tax cases and may not be used to prevent the state from collecting taxes").

16

rule that declaratory relief is sometimes unavailable where there is an adequate alternative remedy—here, challenging the regulation through a refund suit.[103] And even where a section 11350 claim is available, section 11350(d) typically limits the record on judicial review to the materials before the agency during the rulemaking.[104] Given these constraints, we do not believe the Legislature intended section 11350 to be the sole means to challenge regulations in this context. And we do not see how an OTA panel's adjudication of such challenges would undercut the APA's declaratory relief mechanism.

**The California Constitution Does Not Bar OTA Panels from Adjudicating Challenges to Tax Regulations.**

The requestor also argues that if OTA panels hear challenges to regulations, it would violate the California Constitution. The Legislative Counsel raised similar concerns as to Board appeals.[105] We see no constitutional problems.

### *Article III, section 3.5 does not bar OTA panels from deciding whether tax regulations are inconsistent with governing statutes.*

In *Southern Pacific Transportation Co. v. Public Utilities Commission*, the California Supreme Court held that in an administrative adjudication "the Public Utilities Commission had the power to declare a state statute unconstitutional."[106] In response, the voters enacted Article III, section 3.5 of the California Constitution. It provides that an "administrative agency . . . has no power" to "declare a statute unenforceable, or refuse to enforce a statute, on the basis of it being unconstitutional unless an appellate court has made a determination that such statute is unconstitutional."[107] Section 3.5 similarly bars an agency from "refus[ing] to enforce a statute on the basis that federal law or federal regulations prohibit the [statute's] enforcement," unless applying an appellate court's

---

[103] See *Honeywell, Inc. v. State Bd. of Equalization* (1975) 48 Cal.App.3d 907, 914, citing Code Civ. Proc., § 1061; *Flying Dutchman Park, Inc. v. City & Cnty. of San Francisco* (2001) 93 Cal.App.4th 1129, 1138-1139 (declaratory relief unavailable given alternative of local tax refund procedure); see also *K. & W. Pharmacy, Inc. v. State Dep't of Soc. Welfare* (1969) 275 Cal.App.2d 139, 140-142.

[104] Gov. Code, § 11350, subd. (d); see Asimow et al., Cal. Practice Guide: Administrative Law, *supra*, ¶ 20:20 ("When a rule adopted under the APA is challenged in court by an action for declaratory judgment, the rulemaking file becomes the rulemaking record on judicial review. . . . [N]o additional materials can be admitted," citation omitted).

[105] See *In the Matter of the Appeal of: Safeway, Inc.*, *supra*, 2005 WL 3530181, at p. *3 & fn. 3 (describing 2003 Legislative Counsel opinion and disagreeing with its analysis).

[106] *Reese v. Kizer* (1988) 46 Cal.3d 996, 1002; see *S. Pac. Transportation Co. v. Pub. Utilities Com.* (1976) 18 Cal.3d 308.

[107] Cal. Const., art. III, § 3.5, subd. (a); see also *id.*, subd. (b).

determination.[108]  In light of section 3.5, it is clear that OTA panels (like the Board before them) cannot "declare a [tax] statute unconstitutional" and "refuse to enforce" it on that basis.[109]

But section 3.5 does not affect our conclusion here.  Although the provision limits an agency's ability to refuse to enforce a "statute," it says nothing about an agency's power to decline to enforce a regulation.  Both the California Supreme Court and the Court of Appeal have therefore indicated that section 3.5 does not limit an agency's authority to determine that a regulation is invalid in particular circumstances.[110]  Nor would such a reading appear to further the provision's purpose, which is "to prevent agencies from using their own interpretation" of applicable law "to thwart the mandates of *the Legislature*."[111]

In any event, section 3.5 would at most restrict OTA's authority to hear challenges to regulations in limited circumstances.  As the Court of Appeal explained in *Burlington Northern and Santa Fe Railway Co. v. Public Utilities Commission*, section 3.5 "only restricts [an agency's] use of two sources as justification for refusing to enforce a statute: the constitution and federal law."[112]  As a result, section 3.5 does not bar an administrative agency "from refusing to enforce a statute because it is inconsistent with another statute."[113]  If an agency can decline to apply a *statute* as inconsistent with another statute, then it can surely decline to apply a *regulation* on the same basis.

### There are no separation-of-powers concerns here.

We likewise conclude that authorizing OTA panels to adjudicate challenges to regulations would not violate the separation of powers.  We first consider the requestor's arguments that OTA panels sit in a different position than the Board for separation-of-powers purposes.  We then turn to the merits of the constitutional analysis.

---

[108] Cal. Const., art. III, § 3.5, subd. (c).

[109] Cal. Const., art. III, § 3.5, subds. (a), (b); see, e.g., 76 Ops.Cal.Atty.Gen. 98, 101-102 (1993) (under section 3.5, the Board must enforce a statute even if it concludes the statute is unconstitutional); 64 Ops.Cal.Atty.Gen. 156, 162-164 (1981) (same).

[110] See *Goldin v. Pub. Utilities Comm'n* (1979) 23 Cal.3d 638, 669, fn. 18 (section 3.5 "places certain restrictions on administrative agencies relative to their refusal to enforce *statutes* . . . .  It does not affect their enforcement of their own rules"); *Lewis-Westco & Co. v. Alcoholic Bev. Control Appeals Bd.* (1982) 136 Cal.App.3d 829, 840, fn. 12.

[111] *Reese v. Kizer*, *supra*, 46 Cal.3d at p. 1002, italics added; see also *Lockyer v. City & Cnty. of San Francisco* (2004) 33 Cal.4th 1055, 1083-1084 (similar).

[112] *Burlington N. & Santa Fe Ry. Co. v. PUC*, *supra*, 112 Cal.App.4th at p. 887.

[113] *Id.* at pp. 887-888.

18

Constitutional Status of the Board and OTA

At the outset, the requestor argues that, for two reasons, OTA panels have more limited adjudicative authority than the Board did. We do not agree.

First, the requestor notes that the Board was created by the state Constitution, whereas OTA was created by the Legislature. That distinction can be significant. Under the "Constitution, the Legislature may not ordinarily confer judicial functions upon any statewide administrative agency which the Legislature has created."[114] Such agencies cannot exercise judicial power in the constitutional sense (though they may still exercise broad adjudicative authority, as explained below).[115] But "where the Constitution itself has authorized the creation of an agency and has *also* authorized the Legislature to vest judicial powers in that agency, the picture is different."[116] Such an agency can be delegated judicial authority within the scope of the constitutional authorization.[117] The Public Utilities Commission is one example.[118]

As the requestor observes, OTA cannot exercise judicial authority. But neither could the Board of Equalization. Although the Constitution created the Board, it did not authorize the Board to exercise judicial power in the constitutional sense.[119] For this reason, the Supreme Court has long held that the Legislature cannot confer judicial authority on the Board in adjudicating taxpayer appeals.[120] The Board thus stood in the same position as OTA and other executive agencies in the separation-of-powers analysis.

[114] *Perry Farms, Inc. v. Agric. Lab. Rels. Bd.* (1978) 86 Cal.App.3d 448, 460.

[115] See *post*, fns. 127-150 (concluding that agencies created by the Legislature can adjudicate challenges to regulations without exercising judicial power in the constitutional sense).

[116] *Perry Farms, Inc. v. Agric. Lab. Rels. Bd.*, *supra*, 86 Cal.App.3d at p. 460.

[117] See *Lockyer v. City & Cnty. of San Francisco*, *supra*, 33 Cal.4th at pp. 1089-1090.

[118] See *Perry Farms, Inc. v. Agric. Lab. Rels. Bd.*, *supra*, 86 Cal.App.3d at p. 460.

[119] See Cal. Const., art. XIII, §§ 17-19, 28; *id.*, art. XX, § 22; compare *Perry Farms, Inc. v. Agric. Lab. Rels. Bd.*, *supra*, 86 Cal.App.3d at p. 460 & fn. 6 (Constitution authorized Legislature to "confer . . . judicial powers" on agency regulating employee welfare).

[120] See *Aronoff v. Franchise Tax Bd.* (1963) 60 Cal.2d 177, 182 ("no judicial power has been, or could constitutionally be, conferred upon" the Board), citing *Standard Oil Co. v. State Bd. of Equalization* (1936) 6 Cal.2d 557, 565. Although the Board was once authorized to exercise judicial power as to its former authority over alcohol licensing (see *Covert v. State Bd. of Equalization* (1946) 29 Cal.2d 125, 131-132), that authority was later transferred to a different agency (see Cal. Const., art. XX, § 22, subd. (d)).

Second, the requestor cites Government Code section 15672(b), which states that OTA "tax appeals panels and the appeals hearings conducted by the tax appeals panels . . . shall not be construed to be, or to be conducted by, a tax court."[121] Because OTA is not a "court," the requestor argues, its panels lack authority to make "judicial" determinations concerning a regulation's validity. But inasmuch as section 15672(b) reiterates that OTA is not part of the judicial branch and cannot exercise judicial power, it simply restates a background principle generally applicable to executive agencies— including both OTA and the Board. In the words of the Supreme Court, "administrative boards are not courts" and thus cannot "exercis[e] the judicial power of the state" in the constitutional sense.[122]

Moreover, the legislative record suggests that section 15672(b) was not intended to alter OTA's adjudicative authority. In an uncodified portion of the legislation, the Legislature stated that because OTA panels are "administrative bod[ies] and are not part of the judicial branch, it is the intent of the Legislature for taxpayers to choose by whom they are represented, . . . as was previously the case" in appeals before the Board."[123] Consistent with that intent, the Legislature amended a nearby statute to clarify that non-attorneys, such as public accountants, can represent taxpayers in OTA appeals.[124] And it directed OTA to "adopt regulations regarding the presentation of evidence and preparation for hearings" that "do not require application of specialized knowledge."[125]

That legislative context clarifies the likely meaning of section 15672(b)'s statement that OTA is not "a tax court." By reaffirming that OTA panels "are not part of the judicial branch," the provision makes clear that taxpayer appeals cannot be subject to "court" rules limiting participation to attorneys—such as bar registration requirements, or specialized evidentiary procedures.[126] Rather, OTA must facilitate taxpayer representation by non-attorneys, as the Board had done. And because the Legislature's objective to allow non-attorneys to practice does not suggest any intent to constrain OTA panels' *adjudicative* authority, we conclude that OTA panels possess the same authority for these purposes as the Board and other executive agencies generally. As discussed below, that authority includes the ability to adjudicate statutory challenges to regulations.

---

[121] Gov. Code, § 15672, subd. (b).

[122] *McHugh v. Santa Monica Rent Control Bd.* (1989) 49 Cal.3d 348, 361, internal quotation marks omitted.

[123] Stats. 2017, ch. 252 (AB 131) § 2, subd. (b); see *id.*, subd. (c).

[124] See Gov. Code, § 15676; see Stats. 2017, ch. 252 (AB 131) § 12 (amending section 15676).

[125] Gov. Code, § 15679.5, subd. (b)(2).

[126] Stats. 2017, ch. 252 (AB 131) § 2, subd. (b).

20

Separation-of-Powers Analysis

The California Constitution provides that the "powers of state government are legislative, executive, and judicial.  Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution."[127]  It further provides that the "judicial power of this State is vested in" the courts.[128]  Here, the requestor argues that if an OTA panel determines that a tax regulation is inconsistent with governing statutes, it would exercise the "judicial power" in violation of the Constitution.

We do not share the requestor's concerns.  As a general rule, the "separation of powers doctrine is violated only when the actions of a branch of government defeat or materially impair the inherent functions of another branch."[129]  Here, we see no reason why allowing OTA panels to consider the validity of tax regulations would impair the judiciary's functions.  To the contrary, as *Woods* explained, it is *helpful* to the judiciary when an agency evaluates the validity of regulations in an administrative appeal.  Such administrative review avoids "burden[ing] [courts] with matters which can be adequately resolved in administrative fori."[130]  And even if judicial review is necessary, "the task of a reviewing court is simplified by a narrowing and clarification of the issues."[131]

To be sure, unlike OTA, the agency hearing the administrative appeal in *Woods* also promulgated the challenged regulations.  But we see no reason why the Legislature's decision to separate agency rulemaking and adjudicative functions into separate agencies located within the *same branch* of government should alter the separation-of-powers analysis, which is primarily concerned with policing the boundary lines *between* branches of government.  If anything, the Legislature's decision to divide rulemaking and adjudicative authority between different executive agencies advances the "primary purpose" of the separation-of-powers doctrine:  "to prevent the combination" of the "fundamental powers of government" "in the hands of a single person or group."[132]

---

[127] Cal. Const., art. III, § 3.

[128] Cal. Const., art. VI, § 1.

[129] *Burlington N. & Santa Fe Ry. Co. v. PUC*, *supra*, 112 Cal.App.4th at p. 888, quoting *In re Rosenkrantz* (2002) 29 Cal.4th 616, 662; see also *In re Att'y Discipline Sys.* (1998) 19 Cal.4th 582, 602 (separation-of-powers jurisprudence is "pragmatic" and "does not command a hermetic sealing off of the three branches of Government from one another," internal quotation marks omitted).

[130] *Woods v. Superior Ct.*, *supra*, 28 Cal.3d at p. 680.

[131] *Id.* at p. 681; see *Loeffler v. Target Corp.*, *supra*, 58 Cal.4th at p. 1127 (noting benefits of administrative adjudication of tax claims).

[132] *Davis v. Mun. Ct.* (1988) 46 Cal.3d 64, 76; see *McHugh v. Santa Monica Rent Control Bd.*, *supra*, 49 Cal.3d at pp. 361-362 (emphasizing the "principle of check").

21

*Burlington Northern* is again instructive. There, the Court of Appeal held that the Public Utilities Commission could decline to enforce a statute based on the agency's conclusion that it conflicted with another statute.[133] In rejecting a separation-of-powers challenge, the court reasoned that the agency's decision would not "defeat" or "impair" the judicial function.[134] The agency was "in a favorable position to decide whether two statutes it is empowered and commanded to enforce can be consistently enforced."[135] Similar reasoning applies here.

The requestor observes that, by analyzing a regulation's validity, an OTA panel would conduct the same type of analysis performed by courts. But the same is true of all OTA panel functions: finding facts, determining the law, and applying the law to the facts. Yet these types of "legislative delegations of adjudicatory power" to executive agencies are now "routinely accepted."[136] Moreover, while the judiciary may have the final say as to a regulation's validity, that too is true of all OTA decisions. OTA panels interpret statutes and regulations, for instance, yet final authority over those issues "rests with the courts."[137] Accordingly, the fact that a court may ultimately determine a tax regulation's validity does not mean that OTA panels cannot consider the issue at the administrative stage; indeed, under exhaustion rules, taxpayers ordinarily must raise claims at the administrative stage to preserve them for judicial review.[138]

Finally, the circumstances here are distinguishable from cases where executive agencies exceeded constitutional bounds. First, the California Supreme Court has held that an agency would exercise "judicial power" by determining that the "basic statute under which it operates" is unconstitutional—an extraordinary question as to which the

---

[133] *Burlington N. & Santa Fe Ry. Co. v. PUC*, *supra*, 112 Cal.App.4th at pp. 888-889.

[134] *Ibid.*

[135] *Id.* at p. 889. As discussed above, the Public Utilities Commission is authorized to exercise judicial power in some circumstances. But the court's separation-of-powers analysis did not rely on that fact. (See *id.* at pp. 888-889.)

[136] Asimow et al., Cal. Practice Guide: Administrative Law, *supra*, ¶ 2:125; see *McHugh v. Santa Monica Rent Control Bd.*, *supra*, 49 Cal.3d at p. 372 (modern decisions recognize that "agencies do indeed exercise 'judicial-like' powers, and accept the need for [such] powers in our increasingly complex government").

[137] *Newco Leasing, Inc. v. State Bd. of Equalization*, *supra*, 143 Cal.App.3d at p. 124.

[138] See *Loeffler v. Target Corp.*, *supra*, 58 Cal.4th at p. 1108, citing Rev. & Tax Code, § 6932; see also, e.g., Rev. & Tax Code, §§ 19382, 19385 (authorizing a tax refund suit against FTB "upon the grounds set forth in [a] claim for refund"); Cal. Code Regs., tit. 18, § 30103, subd. (a)(3), (4) (OTA jurisdiction to hear appeal from FTB denial of refund claim).

agency could not be expected to provide "a dispassionate hearing."[139]  But here, a challenge to an FTB or CDTFA regulation would not call into question OTA's own rulemaking, let alone its "very existence," so taxpayers can "expect a dispassionate hearing" on a question within the agency's ordinary area of expertise.[140]  And although the Supreme Court later explained that an agency exercises judicial power by declaring that any type of statute is unconstitutional, we are aware of no authority extending that rule to administrative regulations.[141]

Second, agency adjudications can sometimes exceed constitutional limits if there is inadequate judicial review.[142]  That is not an issue here as taxpayers who disagree with an OTA panel decision can seek de novo review in superior court.[143]  As to FTB and CDTFA, their authority to seek judicial review is unsettled; neither agency has ever sought to challenge an OTA decision.[144]  But we are not aware of any authority holding that judicial review is required when an adjudicative agency rules in a regulated party's favor.[145]  Moreover, to the extent FTB and CDTFA lack authority to seek judicial review,

---

[139] *State of California v. Superior Ct.* (1974) 12 Cal.3d 237, 251.

[140] *Ibid.*; see *Burlington N. & Santa Fe Ry. Co. v. PUC*, *supra*, 112 Cal.App.4th at p. 889 (agency was well "position[ed] to decide whether two statutes it is empowered . . . to enforce can be consistently enforced, more so than with constitutional law").

[141] Compare *Lockyer v. City & Cnty. of San Francisco*, *supra*, 33 Cal.4th at pp. 1092-1093 (agencies cannot determine constitutional validity of statutes), with *Woods v. Superior Ct.*, *supra*, 28 Cal.3d at pp. 680-681 (agency could determine statutory validity of regulations), *Burlington N. & Santa Fe Ry. Co. v. PUC*, *supra*, 112 Cal.App.4th at p. 889 (agency could determine whether statute conflicted with other statute).  As described above, the Board prohibited constitutional challenges to FTB regulations, (see *ante*, fn. 41 [describing jurisdictional regulations]), but we are aware of no authority requiring that limitation on separation-of-powers grounds.  In any event, the Board's rules permitted challenges to FTB regulations on *statutory* grounds.  (See *ibid.*)

[142] See *McHugh v. Santa Monica Rent Control Bd.*, *supra*, 49 Cal.3d at pp. 372-373.

[143] See Gov. Code, § 15677.

[144] The statute authorizing taxpayer challenges to OTA decisions is silent as to FTB and CDTFA's authority to seek judicial review.  (See Gov. Code, § 15677.)  Whether those agencies may nonetheless seek judicial review via traditional or administrative mandamus, the default mechanisms to challenge agency action in the absence of express statutory authorization (see Code Civ. Proc., §§ 1085, 1094.5; *ante*, fns. 99-100), or through other means such as a declaratory-judgment action (see, e.g., Code Civ. Proc., § 1060), is beyond the scope of our analysis.

[145] To the contrary, most agency adjudicative decisions are never subject to judicial review in this scenario:  the regulated party has prevailed and thus has no reason to sue,

(continued…)

23

it would be true as to *all* OTA decisions, not just those concerning challenges to regulations.  We have no reason to think that all such decisions, including those performing routine interpretation of the Revenue and Tax Code, pose separation-of-powers concerns.  And FTB's authority to challenge *Board* decisions was similarly unsettled; FTB never attempted to seek judicial review in that context either.  Yet we are aware of no authority calling into question the Board's decades of decisions, including those adjudicating challenges to FTB regulations.

Third, an agency violates separation-of-powers principles by adjudicating disputes that are not "reasonably necessary to effectuate" its "primary, legitimate regulatory purposes."[146]  For example, the Supreme Court held that a rent control board cannot adjudicate "a landlord's common law counterclaims" against a tenant, which would be "extraneous" to the Board's purpose of regulating rent levels.[147]  Here, in contrast, adjudicating challenges to tax regulations is reasonably necessary to effectuate OTA's regulatory purpose:  to provide "a fair and efficient appeals process."[148]  Allowing such challenges "avoid[s] delay and unnecessary expense in vindication of legal rights," while promoting "the efficient use of governmental resources."[149]  An OTA panel's adjudication of such claims therefore raises no separation-of-powers concerns.[150]

## CONCLUSION

When adjudicating a taxpayer appeal, an OTA panel can evaluate whether applying a particular tax regulation to that taxpayer's circumstances would conflict with governing statutes.  If so, the panel can decline to apply the regulation in determining the taxpayer's liability.

---

while the agency typically cannot sue itself to challenge its own decisions.  (See, e.g., *Harris Transportation Co. v. Air Res. Bd.*, *supra*, 32 Cal.App.4th at pp. 1476-1479 [Air Resources Board could declare its own regulations invalid in administrative appeal, even though there would typically be no possibility of judicial review of that determination].)

[146] *McHugh v. Santa Monica Rent Control Bd.*, *supra*, 49 Cal.3d at p. 372, italics omitted.

[147] *Id.* at pp. 374-375; see also *Walnut Creek Manor v. Fair Emp. & Hous. Com.* (1991) 54 Cal.3d 245, 265 (agency could not award emotional distress damages in housing discrimination case).

[148] Stats. 2017, ch. 16 (AB 102) § 2, subd. (b); *id.*, subd. (a).

[149] *Woods v. Superior Ct.*, *supra*, 28 Cal.3d at pp. 680-681.

[150] See also, e.g., *McHugh v. Santa Monica Rent Control Bd.*, *supra*, 49 Cal.3d at p. 375 (agency could determine excessive rents charged by landlord to advance purpose of regulating rent levels); *Bradshaw v. Park* (1994) 29 Cal.App.4th 1267, 1275-1277 (agency could adjudicate monetary penalties against employers who failed to secure workers' compensation insurance to advance purpose of funding injured workers).